THE STATE v. DUFFEY, *Appellant.*

Division Two, May 21, 1895.

1. **Practice in Supreme Court**: SETTING ASIDE VERDICT: EVIDENCE. The supreme court will not reverse a judgment upon the ground that the verdict is not supported by the evidence, unless there is either a total failure of evidence, or it is so weak that the necessary inference is that the verdict was the result of passion, prejudice or partiality.

2. **Criminal Law**: RAPE: AGE OF PROSECUTRIX: EVIDENCE. In a prosecution for rape, where the prosecutrix, her mother and another testified positively and directly that the prosecutrix was, at the time of the alleged offense, under the age of fourteen years, and other witnesses gave indirect and unsatisfactory testimony to the contrary, the evidence will be held sufficient to sustain the finding of the jury that she was then under fourteen years of age.

3. ———: ———: ———: ———. The evidence examined and held sufficient to sustain the finding that defendant had sexual intercourse with the prosecutrix constituting rape, she being at the time under fourteen years of age.

4. ———: ———: ———: ———: CHASTITY. Evidence of bad reputation for chastity is admissible in prosecutions for rape, where the woman is capable of consenting, but is immaterial where the prosecutrix is under the age of consent, except to affect her credibility, for which purpose it is competent.

*Appeal from Gentry Circuit Court.*—HON. C. A. ANTHONY, Judge.

AFFIRMED.

*Chas. O. Patton, R. P. Duncan* and *Gibbany & Ratcliff* for appellant.

(1) The verdict is against the evidence. "The general rule is that before the court will relieve on the ground that the verdict is not supported by the evi-

dence, there must be either a total failure of evidence or it must be so weak that the necessary inference is that the verdict is the result of passion, prejudice or partiality." *State v. Glahn*, 97 Mo. 679. Our contention is that the present case comes within the exceptions stated in this rule, and that the evidence bearing upon the question of the age of the prosecuting witness and the act of copulation, is not sufficient in either case to warrant the verdict of the jury; but that "the result obtained by the verdict must be ascribed to prejudice, passion or partiality, and not to that calm weighing of facts in evidence, which should always characterize the deliberations of a jury," and that this court will not hesitate to interfere to do substantial justice in the matter. *State v. Primm*, 98 Mo. 368, and authorities there cited; also the dissenting opinion of Justice SHERWOOD in *State v. McNamara*, 100 Mo. 109; *State v. McClasky*, 104 Mo. 644; *State v. Young*, 119 Mo. 495; *State v. Cougot*, 121 Mo. 458. (2) Under the peculiar facts and circumstances of this case the court erred in admitting the testimony of the prosecuting witness, Daisy Wilson. As a general rule, the order of court excluding witnesses from the court room is a matter within the discretion of the court, and should be so exercised as to meet the requirements of justice in each particular case. *State v. Hughes*, 71 Mo. 633. (3) The state's fourth instruction is misleading, and therefore should not have been given. It is error to give an instruction which is calculated to mislead the jury. *Sheedy v. Streeter*, 70 Mo. 684; *Thomas v. Babb*, 45 Mo. 384; *Fine v. St. Louis Public Schools*, 30 Mo. 166; *State v. Taylor*, 118 Mo. 161. (4) The court erred in not giving instructions numbered 7 and 10 asked on the part of the defendant. "By a long line of decisions in this state it has been established that evidence of bad general moral character may be given

in impeachment of witnesses." *State v. Taylor*, 98 Mo. 245, and cases there cited. It is the duty of the trial court in criminal cases to instruct the jury in writing upon all questions of law arising in the case, which are necessary for their information, whether asked to do so or not. *State v. Nelson*, 118 Mo. 124. The decisions of this court upon this question have by no means been uniform; but in a recent case, after a thorough investigation of the whole subject, the court came. to the very just and equitable conclusion that "whenever it would be the duty of the trial court upon the proper request to instruct the jury upon any material question of law arising on the evidence, it is equally obligatory upon it to instruct the jury upon such matter of its own motion, whether requested or not. *State v. Taylor*, 118 Mo. 180; R. S. 1889, sec. 4208; the dissenting opinion of Justice SHERWOOD, in the *State v. McNamara*, 100 Mo. 118, and cases cited, and the separate opinion of the same justice in *State v. Murphy*, 118 Mo. 17, and cases cited. An instruction of this character is not an invasion of the province of the jury. *State v. Witten*, 100 Mo. 525; *State v. Patrick*, 107 Mo. 170.

*R. F. Walker*, Attorney General, and *Morton Jourdan*, Assistant Attorney General, for the state.

(1) The indictment is sufficient. R. S. 1889, sec. 3480; *State v. Burries*, 126 Mo. 565; *State v. Wray*, 109 Mo. 597; *State v. Meinhart*, 73 Mo. 563. (2) It can not be said there is a failure of proof, therefore this court will not interfere to reverse the judgment. *State v. Cantlin*, 118 Mo. 100; *State v. Banks*, 118 Mo. 117. (3) Nor was error committed in the admission or exclusion of testimony. By this allegation defendant doubtless refers to the action of the court in admit-

ting the records of defendant's former convictions of other offenses. These were entirely proper. *State v. Loehr*, 93 Mo. 106; *State v. Crow*, 107 Mo. 347. (4) The instructions given by the court cover the entire case as made by the indictment and the testimony and rendered it unnecessary to give any asked by defendant. Most of those asked by defendant were erroneous and were properly refused. (5) The defendant has been fairly tried, and the judgment should be affirmed.

GANTT, P. J.—The defendant, Ed. Duffey, was indicted, tried and convicted at the September term, 1894, of the Gentry circuit court, of rape of Daisy Wilson, a female child under the age of fourteen years, to wit, thirteen years on the nineteenth of May, 1894. He was sentenced to the penitentiary for five years, and from that judgment has appealed to this court.

The facts disclose a very low grade of morals among all the actors connected with the crime charged. The testimony for the state tends to show that on the night of May 18, 1894, the prosecutrix, in company with Elijah Summers, started in a buggy from Stanberry, in Gentry county, to drive to a dance at one George Allen's, some several miles in the country; that they drove out to Allen's, but did not get out of their buggy, turned and started to return to Stanberry. They had not gone far, however, when they were overtaken by defendant and one John Lemley, who were riding horseback; that defendant caught the reins of the team driven by Summers, stopped it and compelled the girl to leave the buggy and accompany him across the road into the brush, where, the prosecutrix says, defendant forcibly ravished her; that she attempted to resist and to make outcry, but was intimidated and put, and kept, in fear by the threats and exhibition of the pistol held first by defendant and then by his accomplice,

Lemley; that upon the consummation of the crime by defendant, Lemley also raped prosecutrix under the same circumstances; that while these deeds were being accomplished, they in turn held the team and kept Summers under cover of a revolver.

It was shown that the prosecutrix was under fourteen years of age. The prosecutrix and her mother both testify positively to this fact, though there was evidence for defendant that she was over fourteen.

Defendant admits his presence at the time and place the crime was committed. He says he secured the consent of Summers to take "his girl" for a walk while he (Summers) remained in the buggy and held the team; that he took prosecutrix out in the brush; that they sat down and talked; that he suggested that they return to the buggy; that she said: "Ain't you going to do anything after you brought me out here?" that he said, "No," and laughed at her; that she cursed him, and asked him for a bottle of whiskey or twenty five cents, and that he gave her twenty five cents; that she asked him who the other fellow was (referring to Lemley), and he told her, and she said, tell him to come over here, and he did; that when she and Lemley returned he asked her if they had had intercourse, and she said no, Lemley didn't have any money.

It is also shown that defendant wrote a letter while in jail in which aid to escape was asked. His admissions are also shown.

An attempt was made to impeach the reputation of prosecutrix and her mother, but the reputation of the witnesses called for that purpose was in turn also impeached, and the jury evidently discarded it. For instance, one witness, at the time of testifying to the bad reputation of the parties, was himself under indictment for burglary and larceny; another witness, Lewis

Deering, is shown to have pleaded guilty to petit lar-
ceny; and the defendant had pleaded guilty to burglary
in the second degree, and had been sentenced to the
penitentiary; he had also pleaded guilty to larceny from
a dwelling house.

Various errors are assigned, and will be discussed
in the order of appellant's brief.

I.   The first ground upon which a reversal is de-
manded is that the verdict is against the evidence.
Appellant concedes that the general rule is that, before
this court will relieve on this ground, there must be a
total failure of evidence to sustain the charge, or it must
be so weak that the necessary inference must be that
the verdict is the result of passion, prejudice, partiality
or evident mistake.   *State v. Glahn*, 97 Mo. 679; *State
v. Cougot*, 121 Mo. 458.   But his contention is that this
case falls within the exceptions, and the evidence upon
the two essential facts, that the female was under the
age of fourteen years, and the act of coition or copula-
tion was not sufficient to support the verdict or estab-
lish either of these material facts.

The evidence as to the age of Daisy Wilson was as
follows:   She testified herself that she was fourteen
years old on the second day of July after this alleged
offense on the nineteenth of May, 1894.   Her mother,
Maria Wilson, testified that Daisy was born July 2,
1880, at Mt. Ayr, Iowa.   She did not keep, or have, a
family record.   She had six children; Daisy was the
oldest, and the only child when she moved to Stan-
berry.   William H. Sullivan testified that he knew the
parents of Daisy Wilson.   He remembered seeing Mrs.
Wilson first in the fall of 1880.   She then had a baby in
her arms.   The child was about two or three months old.
He always understood Daisy was the child they had
with them when they moved back from Iowa.   George
Shoemaker testified he lived on the same street with

the Wilsons in February, 1881. Mrs. Wilson then had one small child. It might have been anywhere from one to three years old. Paid no attention to it. Mr. Samuel Jordan made the enumeration of school children for 1894 in May. He asked Mrs. Wilson Daisy's age, and she gave it as fourteen. Don't remember that he asked her birthday, or when she was, or would be, fourteen. Mrs. Cranor, for the defense, testified that she had a daughter that would be sixteen in January, 1895, and Daisy was born in July after this daughter was born. John Cogdill testified in a general way that he had known Daisy about twelve years. Judged from her looks that she was about three when he first saw her near Mr. Shattuck's. Mrs. Bartlett, the mother of defendant Duffey, testified that she had lived in Stanberry fourteen years the twenty-seventh of August, 1894. Had known Daisy ever since the week after she arrived. She saw her toddling around on the sidewalk the week after she arrived in Stanberry.

Here we have the direct positive evidence of the mother, daughter and Mr. Sullivan that she was under fourteen contradicted by the indirect and unsatisfactory evidence of those who could readily be mistaken about the dates in which they were not particularly interested. We have no hesitation in saying that the jury were amply justified in finding she was not fourteen years old when the crime is alleged to have been committed.

Now as to the evidence of copulation. The undisputed evidence shows that Daisy Wilson lived with her mother, Maria Wilson, in Stanberry, Gentry county, Missouri. On the evening of May 18, 1894, she accompanied Elijah Summers in a buggy to a dance at the house of Mr. Allen, seven miles from Stanberry. On their return they had only gone a short distance when they were overtaken by defendant and John Lemley

who were traveling on horseback. When Duffey and Lemley caught up with Summers, Summers' team was stopped. He and Daisy say by Duffey. He rode up on the left side and caught Summers' horse by the reins, and stopped the team. The defendant simply proceeds with his narrative after the team was stopped. Does not inform us how they came to halt at that point. Summers and Daisy both say Duffey said he was going to have that girl and Summers demurred. Thereupon Duffey got into the buggy and displayed a revolver and forced Daisy to get out by pulling her and threatening; that he forced her under a wire fence on the side of the field and took her a short distance into the brush and raped her.

Duffey gives a very different version. He says when he and Lemley overtook them, they had some conversation and he said to her as she sat by Summers in the buggy "Have you any objections to take a walk with me?" She said "No" and turned to Summers and asked him if he objected and he said "No." He says then he reached up his arms and she reached out her hands and he helped her out of the buggy, and they walked to the fence about seven feet away. She reached down and he held up the wire and she crawled under and they then went about twelve feet, and sat down. He said to her, "This will make Summers hot." She said she knew it but didn't care. He says, "I sat there and deviled her; talked to her as I always had, and then said, 'Come on, lets go' and she said, 'Ain't you going to do anything after you brought me out?' I says, 'No,' and laughed at her. She then cursed me and demanded whiskey or money and I gave her twenty-five cents." She then told him to send Lemley to her and he left her and told Lemley, and Lemley went and when they came back to the buggy "I asked her if they did anything and she said 'No, he

had no money.'" He helped her into the buggy. She and Summers went to town and he and Lemley went back to the dance.

Summers says that during the time that Duffey was with the girl Lemley held the pistol over him and when Duffey returned, he took the pistol and Lemley went to her. When the girl came back she was crying and said they had raped her. She testified distinctly that they both had sexual intercourse with her. Price Oden testified that defendant admitted in his presence next day that he had intercourse with the girl. John Duffey denied Oden's evidence. Deering and Evans testified to statements of Daisy Wilson denying they had intercourse with her.

Counsel urge upon this court that this evidence is not sufficient to establish sexual intercourse.

The story told by his client raises an almost conclusive presumption against himself. It is utterly incredible that he should have left the dance and pursued Summers and Daisy just to have a five or ten minutes talk with the girl. According to his statement she was utterly without modesty or virtue. Why should Summers get offended if their mission into the brush was innocent? Why should he at that hour of the night insist on her leaving the companionship of the man who had taken her to the party and go into the brush with him? Independent of the testimony of Daisy and Summers, his own testimony furnishes an almost unanswerable inference against the truth of his denial of intercourse with the girl that night. Admitting, as we must, that the evidence indicates a wretched state of depravity on both sides, still the unquestioned facts so far corroborate the girl's story that we are at a loss to see how the jury could have found otherwise.

The evidence made out a case of rape because the girl was under fourteen. Accordingly, the contention

that the verdict was against the evidence can not be sustained. There was no such failure of proof as would justify this court in reversing on that ground.

II. There was no error in permitting Daisy Wilson to testify. It was entirely within the discretion of the prosecuting attorney as to the order in which he called her, and within the discretion of the court to permit her to be present in court when the other witnesses testified. There is no order in the record excluding any witness.

III. The court gave the following instruction, among others, for the state:

"4. The jury are instructed that if they believe from the evidence that the defendant, at the time and place mentioned in the testimony, had sexual intercourse with said Daisy Wilson, and that she was then and there under the age of fourteen years, then the fact that her reputation for chastity may have been bad, constitutes no defense, and they can not acquit the defendant on that ground."

There was no error in it. Evidence of bad reputation for chastity, of course, is admissible in cases where the woman is capable of consent, but it is utterly immaterial here, save as to her credibility and it was admitted for that purpose. The ninth instruction on the credibility of the witnesses authorized the jury to disregard all of her evidence if they believed she willfully testified falsely to any material fact and they were expressly authorized to consider her want of chastity.

The instructions were sufficient and the verdict was supported by the evidence. Defendant can not well complain that the jury convicted him upon the testimony of those with whom he constantly associated. Unsavory as their reputations are, they compare favorably with that of himself and his witnesses. The jury,

who saw and heard all the evidence, doubtless made the proper discrimination in the case and their verdict is affirmed.  BURGESS and SHERWOOD, JJ., concur.