# DECISIONS

OF THE

# Supreme Court of Florida.

## JUNE TERM, 1904.

CHARLES ADKINSON, *Plaintiff in Error,* v. THE STATE OF
FLORIDA, *Defendant in Error.*

1. On a prosecution for breaking and entering the defendant
should be allowed a proper cross-examination of a State's
witness as to her usual custom in closing doors.

2. It is error to permit on cross-examination a question that
tends only to humiliate or degrade a witness, the answer to
which shows no possible favorable bias.

This case was decided by Divison A.

Writ of error to the Circuit Court for Walton county.

The facts in the case are stated in the opinion of the
court.

*Daniel Campbell & Son* for plaintiff in error.

*W. H: Ellis,* Attorney-General, for the State.

COCKRELL, J.—The plaintiff in error, hereafter called
the defendant, was convicted of breaking and entering a
dwelling with intent to commit a misdemeanor, and upon
the refusal of the Circuit Court to grant him a new trial
assigns here nine errors.

The first assignment is based upon the refusal of the
court to permit the defendant's attorney to propound the

following question to the State's witness Maggie Clark, to-wit: "Did you always shut and nail the doors when you left?" This girl, the twelve year old daughter of the prosecuting witness, had testified that she and her sister had nailed up the house and closed it, going out through a sliding window. The breaking was an essential feature of the crime of which the defendant was convicted and while we do not say that the refusal to permit the question would in and of itself cause a reversal of this case, we think the question should have been answered. The youth of the witness, as well as her natural interest in protecting her-self against a possible accusation of negligence in the care of her father's house, rendered her peculiarly subject to the advantages to be derived from a proper cross-examination.

On the other side we think the court below too liberal in allowing a cross-examination on the part of the State. A defendant's witness, who had testified that the Clark girls had told him that negroes had stolen the property in issue and that the reputation of these girls for truth and veracity was bad, was asked by the State if he or his daughter were related to the defendant and replied in the negative, and then over defendant's objection was asked if his daughter did not have two children of which defendant's brother is the father, and answered in the affirmative, but that they were not married and that Adkinson's brother did not visit his house where his daughter lived. The only effect such questions could have, it seems to us, is to degrade the witness in the minds of the jury, not for any crime the witness may have committed, but because of the misfortune of a misguided daughter. Such left handed relationship is not recognized in the law as one likely to bias a witness' favor, the tendency is much the other way and for permitting the question the judgment must be reversed.

We have recently had occasion to pass at some length upon what constitutes capacity in a witness to testify as to general reputation, and here we need only to refer to our

views as expressed in *Alford v. State,* 47 Fla. 1, 36 South. Rep. 436.

The rulings, the basis for other assignments, are not likely to occur at another trial and will not be considered, nor would it be proper to discuss the weight of the evidence.

For the error above noted the judgment is reversed and a new trial awarded.

TAYLOR, C. J., and HOCKER, J., concur.

CARTER, P. J., and SHACKLEFORD and WHITFIELD, JJ., concur in the opinion.