Tully v. State—Syllabus.

W. C. TULLY, JR., *Plaintiff in Error,* v. THE STATE OF
FLORIDA, *Defendant in Error.*

Opinion Filed June 3, 1915.

1. In a prosecution for rape no error is committed in admitting
   in evidence for the purpose of leading up to subsequent events
   and rendering them intelligible to the jury the following
   statement made by the prosecuting witness to her young lady
   friend whom she was visiting; though not made in the pres-
   ence of the defendant: "When Miss Lucy came in and told
   me, I told her to go and tell her mother."

2. In a prosecution for rape no error is committed in sustain-
   ing objections to the following two questions propounded to
   the prosecuting witness on her cross-examination: "On the
   night before you went out with the two Tullys, didn't you
   and Lucy Nelson 'phone for a car, and have the car meet
   you, and two men to meet you, in the dark back of the Capi-
   tol and go out driving?" Also, "Were you and Miss Nelson
   then on Thursday night, the night this thing is said to have
   occurred, with Otto Barrineau and another party in the cem-
   etery here in town drinking beer and having a 'good time
   generally?"

3. Upon a trial for rape the character of the prosecutrix for
   chastity, or the want of it, is competent evidence as bearing
   upon the probability of her consent to the defendant's act,
   but the impeachment of her character in this respect must be
   confined to evidence of her general reputation, except that
   she may be interrogated as to her previous intercourse with
   the defendant, or as to promiscuous intercourse with men,
   or common prostitution.

4. Objections are properly sustained to questions propounded
   to the prosecuting witness in an action for rape which seek
   to elicit admissions from the witness of acts constituting
   imprudent conduct upon the part of such witnesses with
   other men, which might tend to show a probability of con-
   sent on the part of the prosecutrix to the act of the defend-

ant, especially when the theory of the defense is based not upon consent to the act but upon a denial that the defendant had ever had any carnal intercourse whatever with the prosecutrix.

5. In a prosecution for rape, inquiries upon the cross-examination of the prosecutrix into collateral matters should not be permitted, unless there is reason to believe that such inquiries may tend to promote the ends of justice and the same seem essential to the proper estimation of the testimony of such witness by the jury. Testimony should not be permitted to be offered which introduces collateral issues which have no bearing upon the defendant's guilt, and the court should promptly suppress all inquiry into matters not relevant to credit, and should not permit a disparaging course of examination which seems unjust to the witness and uncalled for by the circumstances of the case.

6. A witness can not be cross-examined as to any fact which is collateral or irrelevant to the issue merely for the purpose of contradicting him by other evidence if he should deny it, thereby to discredit his testimony.

7. It is within the sound judicial discretion of the trial court to control the detailed examination of witnesses, and, unless an abuse of this judicial discretion is shown to the appellate court, it will not disturb or reverse the ruling.

8. Courts of justice exist for the administration and furtherance of justice and in the conduct of trials generally much must be left to the discretion of the trial judge.

9. Objections are properly sustained to questions propounded to a witness upon cross-examination which seek to elicit testimony which would tend only to humiliate or degrade such witness.

10. When a witness is offered either as an expert or a skilled witness, it is for the trial court to determine whether or not the witness has been shown to possess the requisite qualifications and special knowledge to warrant his so testifying,

and the decision of such trial court is conclusive upon this point, unless it appears from the transcript to have been erroneous, or to have been founded upon some error in law.

11. A refusal of the trial court to permit the jury to view the *locus in quo* will not be reviewed where no abuse of discretion is shown.

12. In determining the correctness of charges and instructions, they should be considered as a whole; and if, as a whole, they are free from error, an assignment predicated on isolated paragraphs or portions, which, standing alone, might be misleading, must fail.

13. In passing upon a single instruction or charge, it should be considered in connection with all the other instructions and charges bearing on the same subject; and if, when thus considered, the law appears to have been fairly presented to the jury, an assignment predicated upon the giving of such instruction or charge must fail, unless under all the peculiar circumstances of the case the court is of the opinion that such instruction or charge was calculated to confuse, mislead or prejudice the jury.

14. Requested instructions are properly refused, even though they state correct principles of law applicable to the case being tried, when such principles have been fully covered by charges and instructions already given.

15. In passing upon an assignment questioning the correctness of the ruling of the trial court in denying a motion for new trial which is based upon the sufficiency of the evidence to sustain the verdict, the guiding principle for an appellate court is not what it may think the jury *ought* to have done or what such court may think it would have done had it been sitting as a jury in the case, but whether as reasonable men the jury could have found such verdict. If this question can be answered in the affirmative, the action of the trial court upon such motion should not be disturbed.

Writ of error to Circuit Court for Leon County; J. Emmet Wolfe, Judge.

Judgment affirmed.

*W. H. Price, W. J. Oven, W. C. Hodges* and *Nat R. Walker,* for Plaintiff in Error;

*T. F. West,* Attorney General, and *C. O. Andrews,* Assistant, for the State.

SHACKLEFORD, J.—W. C. Tully, Jr., was indicted for the crime of rape upon Willie Cook, a female over the age of ten years, and one A. E. Tully was charged in the same indictment with being an accessory to such crime. Upon trial before a jury W. C. Tully, Jr., was convicted of an assault with intent to commit rape and A. E. Tully was acquitted. W. C. Tully, Jr., was sentenced to confinement at hard labor in the State prison for the period of ten years and seeks relief here by writ of error.

The first error assigned is as follows: "The court erred in permitting the witness, Willie Cook, to testify, over the objections of the defendant, as to a conversation between herself and the witness, Lucy Nelson, such conversation not being in the presence of the defendants, or either of them, such conversation being as follows: 'When Miss Lucy came in and told me, I told her to go and tell her Mother,' and in refusing to grant the motion of the defendant to strike such testimony."

We find that Willie Cook was the first witness introduced upon behalf of the State, whereupon the following proceedings took place:

"My name is Willie Cook; I am seventeen years of age. I know a man by the name of Will. C. Tully, Jr.; he is the man on trial here. I also know a man by the name of Emory Tully. He is also one of the defendants on trial. Q.  Will C. Tully, Jr. is charged with having on the 14th day of August this year, had carnal intercourse with you by force and against your will, and Emory Tully is charged with being present at the time. Just state now, Miss Willie, to the court and to the jury how it took place. Just state all the circumstances connected with it, and talk, Miss Willie, if possible, so that the farther gentleman there can hear you (indicating jury). A.  Well, I was visiting Lucy Nelson at the time, and Lucy was up town at work, and she came in at twelve o'clock for dinner. She came in the room where I was and told me —— Mr. Price:  Wait a minute. You need not state any conversation between you and Lucy. Mr. Walker:  Never mind what Lucy told you. In order to get at it more directly now I will ask you the question. After she came in, what did you say to Miss Lucy? Mr. Price:  I object to that; any conversation between the two, not in the presence of the defendant, is improper. The Court:  I do not think the conversation is material. Mr. Walker:  If your Honor please, the object of the question is to show why she went out and how it was that they went out to this place, and in order to do that, as a matter of fact, the State will have to show what the witness said to other parties, not what Miss Lucy said to her, but what the witness said to other parties before going out there. The Court:  It might be admissible for the purpose of leading up to the subsequent events. Mr. Walker:  That was the object of the question. The Court:  She can answer. Mr. Price:  Your Honor will note an exception. When Miss Lucy came and told me, I told her to go and tell her mother.

*Mr. Price*: I move to strike that statement as being irrelevant and immaterial and hearsay, and not binding on the defendant. *The Court*: Motion is denied. *Mr. Price*: Your Honor will note an exception."

As stated above, this was the first testimony offered by the State, and we think that it was admissible "for the purpose of leading up to the subsequent events" as was stated by the trial judge, and rendering them intelligible to the jury. What "subsequent events" might be developed by the testimony had not then been disclosed. It will be observed that the witness did not state what Miss Lucy told her or what the witness told Miss Lucy to tell her mother. How this statement of the witness could have been harmful to the defendant we do not see, therefore must hold that this assignment has not been sustained.

The second and third assignments, which are argued together, are as follows:

"Second Assignment of Error.

The court erred in sustaining the objection interposed by the State to the following question propounded by defendant's counsel to the witness, Willie Cook, namely: 'On the night before you went out with the two Tulleys, didn't you and Lucy Nelson 'phone for a car, and have the car meet you, and two men to meet you, in the dark back of the Capitol and go out driving?' "

"Third Assignment of Error.

The court erred in sustaining the objection interposed by the State to the following question propounded by the defendant to the witness, Willie Cook, to-wit: 'Were you

and Miss Nelson then on Thursday night, the night this thing. is said to have occurred with Otto Barineau and another party in the cemetery here in town drinking beer and having a good time generally?' "

The two questions to which objections were interposed by the State, the sustaining of which forms the basis for these assignments, were propounded to the prosecuting witness on her cross-examination. We would refer to our discussion in Rice v. State, 35 Fla. 236, 17 South. Rep. 286, 48 Amer. St. Rep. 245, wherein we held as follows: "Upon a trial for rape the character of the prosecutrix for chas-tity, or the want of it, is competent evidence as bearing upon the probability of her consent to the defendant's act, but the impeachment of her character in this respect must be confined to evidence of her general reputation, except that she may be interrogated as to her previous intercourse with the defendant, or as to promiscuous intercourse with men, or common prostitution." As we stated therein, although there is some division in the authorities upon this point, the rule which we therein adopted, is "sanc-tioned by the preponderance of authority." See the authorities there cited and also the following: People v. McLean, 71 Mich. 309, 38 N. W. Rep. 917, 15 Amer. St. Rep. 263, and especially the excellent note on page 714 et seq. of 14 L. R. A. (N. S.) where the authorities upon either side of the question will be found fully collected. As we also said in Rice v. State, supra, "Considering the the line of defense adopted by the defendant, no injury could have been done by him by ruling out this testimony. The only purpose for which such testimony was offered was to show a probability of consent on the part of the prosecutrix to the act of the defendant. The defense was not based upon any theory of consent to the act, but

upon a denial by the defendant that he had ever had any carnal intercourse whatever with the girl. Therefore the testimony was wholly immaterial, and could not have any reference to the defense made by the defendant." We think that this language is well applicable to the instant case, in which the defense relied upon is a denial of any carnal intercourse with the prosecuting witness. How could it have availed the defendant, even if such testimony so sought to be elicited had been admitted? If specific acts of the unchastity of the prosecuting witness were not admissible, but only her general reputation for chastity, then it would necessarily seem to follow that the testimony which such questions sought to establish was not admissible, for at the most such acts would only have been imprudent conduct upon the part of the prosecuting witness and her young lady friend. We fully approve of the principles relative to the scope of the cross-examination of witnesses enunciated in the case of Wallace v. State. 41 Fla. 547, 26 South. Rep. 713, cited to us by the defendant, but fail to see the applicability of such principles to the two assignments now under consideration. As was said in Rice v. State, *supra,* "The greatest objection to such testimony is that it introduces collateral issues which have no bearing upon the defendant's guilt." As we also held in the case of Wallace v. State, *supra,* in discussing the rules applicable to the cross-examination of a witness, "Inquiry into collateral matters should not be permitted unless there is reason to believe that it may tend to promote the ends of justice and it seems essential to the true estimation of the witness' testimony by the jury. The court should promptly suppress all inquiry into matters not relevant to credit, and should not permit a disparaging course of examination which seems unjust to the witness, and uncalled

for by the circumstances of the case." We are clear that these two assingments have not been sustained.

The fourth assingment is as follows: "The Court erred in sustaining the objection interposed by the State to the following question propounded by defendant's counsel to the witness, Willie Cook, and in not permitting the said witness to answer said question: 'As a matter of fact, did you, on that evening in which you and Miss Nelson went to take this ride, write a note or send word to some young men here in town who wanted to call on you that you could not go with them that evening, that you were going to a party?' and in refusing to permit the witness to answer the additional question propounded to her, to-wit: 'As a matter of fact, was there any party to be had that night?' And the court erred in sustaining the objection to each of said questions severally, and in not permitting the witness to answer each of said questions." What we have said in treating the second and third assignments also applies to this assignment and it must fail for the like reason. As we held in Fields v. State, 46 Fla. 84, 35 South. Rep. 185, "A witness can not be cross-examined as to any fact which is collateral or irrevelant to the issue merely for the purpose of contradicting him by other evidence if he should deny it, thereby to dis-credit his testimony."

The fifth assingment is abandoned.

The sixth, seventh and eight assingments are as follows:

## "Sixth Assignment of Error.

The Court erred in excluding, upon its own motion, the question propounded to the witness, Willie Cook, by the defendant's counsel, and in refusing to permit her

to answer the same, as follows, to-wit: 'Why didn't you holler more than that, did Bill Tully have his hands around your mouth, too?' "

"Seventh Assingment of Error.

The Cou.. erred in excluding the following question propounded by the defendant to the witness, Willie Cook, upon its own motion, as follows: 'Don't you know that the mere placing of his hands on, or the mere squeezing of your thigh would not prevent your hollering?' and in stating in the presence of the jury, in refusng to permit the witness to answer the question, as follows: 'She need not answer that question, it is entirely improper and irrevelant; you cannot go into her mental processes that way, Mr. Price. She stated that she did not do it; she stated that he had his hand on her thigh, and she says that is the reason.' "

"Eight Assingment of Error.

The Court erred in sustaining the objection interposed by the State to the following question propounded to the witness, Willie Cook, as follows: 'Why didn't you raise some kind of an alarm as you went along the street?' "

The prosecuting witness had testified that she knew that the defendant was a married man, but had accepted an invitation which came from him through her friend, Lucy Nelson, whom she was visiting, to take an automobile ride on the night in question with the defendant and Lucy Nelson upon the understanding that the defendant's wife was also to accompany them, that the defendant came in his car to the house where the two girls were staying,

whereupon the prosecuting witness asked the defendant where his wife was, to which he replied that he had to go up town and had· told his wife that he would come by for the two girls and then go on to his home for his wife. Upon this assurance the two girls got into the car and the defendant started off with them and they "came down to the next street and came down this back street and up there to an oak tree, there he sorter slowed up and Emory Tully jumped in the car, and he grabbed Lucy and held her mouth so she couldn't holler, and then Bill Tully went in full speed." After the witness had been cross-examined at some length, such cross-examination proceeded as follows: "After I got in this car, and before it started, I was on the front seat and Lucy was by herself on the back seat. When we got on North Calhoun Street Will Tully did not turn the car in the direction of his house but was going at full speed. He sort of slowed up and Emory Tully jumped in and then he went full speed. He never stopped the car so that Emory Tully could get in. Before Emory Tully got in the car ran into a little ditch. Miss Nelson nor I either screamed at that time. We did not say, 'Oh,' or something that way. Miss Nelson did not say anything like that. We did not sort of scream like people would when the car makes a sudden jump. I do not know whether there were any houses there when the car slowed up or not. I do not know what street it is on, it is a back street. I do not know whether or not it is the next street from here (that is the Court House) and on the East side of the Court House. I do not know, as a matter of fact, that there is a corner of a block where Emory Tully was standing by the tree or not, and do not know whether there was a man's house close to this corner by the name of Proctor. I do not know whether there was a house some twenty-five or thirty feet

from that corner. I don't remember, I was frightened so, I don't know what it was. I know I was scared. I don't know whether or not, when the car got up there by Proctor's house it was right under a large electric light, I don't know whether there was a light there or not, I didn't look to see. When I saw Emory Tully jump in I hollered. I hollered as loud as I could when Emory Tully jumped in the car. Q. Well now, didn't you testify in this case once before or twice before? A. No answer. I hollered as loud as I could when he got in. As well as I remember, Lucy screamed when Emory Tully got in the car, she hollered when he grabbed his hand over her mouth. He put his hand over her mouth when he jumped in the car, he did that just as soon as he got in the car. Q. Don't you know, as a matter of fact, that he never put his hand over her mouth until he got a block or so away. A. I know he put his hand over her mouth to keep her from hollering. Q. Weren't there three or four people staying at the house where Emory Tully got in. A. I didn't know whether there was a house there or not. I know Mr. Tully put his hands over Miss Lucy's mouth because I saw him. I was not looking up the road. When I saw him jump in, I turned around to see what he was going to do. Q. Did he put his hand over her mouth before he sat down? A. He grabbed his arm around her and shut the door and sat down. Q. As I understand you, as he got in the car he shut the door and reached with one hand around her and put it around her mouth. Is that right? A. I said he put his hand around her neck and held her mouth and shut the door. The car was not standing still at that time, it was going as fast as it could. I know that the car was not stopped when he got in, and know that it had started up before he sat down. When the car started to turn the corner, I hollered again. I

do not know how far it was from the place where Mr.
Tully got in the car before I hollered agaiń. I don't know
whether it is a half mile or not. I don't know whether
it was five or six blocks. I hollered once at the place
where Emory Tully got in. Q. Why didn't you holler
more than that, did Will Tully have his hand around your
mouth, too? *The Court*: She need not answer that
question, she stated that she hollered once. *Mr. Price*:
Does your Honor say that I cannot ask her why she did
not holler more? *The Court*: I don't see that it is neces-
sary. *Mr. Price*: What I think is this: The law requires
that a woman shall resist with all her power, and if she
claims that she was scared and that Emory Tully got in
this car—he was going up a public street with electric
lights and people on each side of the street—seems to me
that it is verý material. *The Court*: You asked her if
she screamed, she says she screamed once. *Mr. Price*:
When they got in the car. *The Court*: Yes. *Mr. Price*:
Now then I ask her why she did not scream more. *The
Court*: I don't think she need answer that question.
*Mr. Price*: Your Honor will note an exception as to that
ruling of the Court. We think we have a right to show,
as going to affect the credibility of the witness that as a
matter of fact, she was not prevented from screaming,
that nobody was doing anything to her, and that she was
going out voluntarily, and as affecting her crediblity. *The
Court*: You can ask her if she was prevented from scream-
ing. Q. Were you prevented from screaming in any
way? A. Yes I was. Q. How? A. Will Tully grab-
bed me in the thigh? Q. You mean to tell this jury that
by putťting his hand on your thigh it would keep you from
hollering? Is that your reason? A. Yes, it was. Q.
And he kept you from hollering simply by putting his
hand on your thigh? A. He didn't just put it over, he

kept hold of it, and the print of his hand was there that night when I got home. Q: It wasn't there the next day, was it? A. It was there that night. Q. Was it there the next day? A. I didn't look to see. Q. Did you have anybody else examine it to see? A. No. Q. Don't you know that the mere placing of his hand or the mere squeezing of your thigh would not prevent your hollering? *The Court*:   She need not answer that question, it is entirely improper and irrelevant.   You can't go into her mental processes that way, Mr. Price.   She stated why she didn't do it, she stated that he had his hand on her thigh, and explained the manner, and she says that is the reason. *Mr. Price*:  Your Honor will not an exception. Q.   He made no threats against you at that time, did he? A.   I don't understand what you say?   Q.   He didn't make any threat against you, did he?  A.  No, because he was running the car.   Q.   Well if I understand you, the reason that you did not holler was this—he was running the car with one hand and had his hand on your thigh with the other, and you could not holler.  Is that it?  A.  When he got near the Tier's home?  Q.  I am not talking about the Tier's home, I mean this public street down here now?   A.  Yes, that is the reason I didn't holler, I was frightened to death, too.  As well as I remember, there were houses on both sides of the street; as well as I remember now there were.   There were electric lights at every corner or at every other corner hanging over the streets, I don't know how near they were together. I don't remember anything about passing another automobile on that street where some men were putting up the top.  I don't remember passing within four or five feet of an automobile. .I was sitting on the left hand side of the car.  Q.  On the left hand side, you could see up the street couldn't you?  A.  I wasn't saying anything about

looking up the street. Q. You knew that you were being carried off with two married men in the car? A. Yes, and I was frightened to death, too. Q. But you were not doing any hollering about it, were you? A. I hollered as long as I could. I didn't see any car as I passed along. That is the reason I didn't holler to the men at the car. Q. Why didn't you raise some kind of alarm when you went along the street? *Mr. Walker*: I object to that. *The Court*: She need not answer that question; you can have what she did and didn't do, but you needn't ask her why. *Mr. Price*: Your Honor will note an exception."

We have copied this portion of the cross-examination of the witness upon which these three assignments are founded because we think that it clearly shows that the errors are not well assigned. As we held in Fields v. State, *supra*, "It is within the sound judicial discretion of the trial court to control the detailed examination of witnesses, and, unless an abuse of this judicial discretion is shown to the appellate court, it will not disturb or reverse the ruling." No abuse of the sound judicial discretion thus vested in the trial court has been made to appear to us and we do not see wherein the defendant was harmed by the rulings complained of. See also as to the discretion in the conduct of trials generally which necessarily is vested in the trial judge, Wilson v. Johnson, 51 Fla. 370, 41 South. Rep. 395; Adams v. State, 55 Fla. 1, 46 South. Rep. 152; Hughes v. State, 61 Fla. 32, 55 South. Rep. 463; Malsby v. Gamble, 61 Fla. 310, 54 South. Rep. 766.

The ninth, tenth and eleventh assignments which are argued together are as follows:

"Ninth Assignment of Error.

The Court erred in sustaining the objection interposed by the State to the following question propounded by counsel for the defendant to the witness, Willie Cook, to-wit: 'Why did you swear on examining trial that you did not know whether it was open or not, if you now swear that you saw the blades?'"

"Tenth Assignment of Error.

The Court erred in refusing to permit the witness, Willie Cook, to answer each of the following questions propounded to her by counsel for the defendant, to-wit: 'Well, your memory was better then than it is now?' 'Well, can you tell the jury here why you have changed your testimony?' 'Why was it, Miss Willie, that you swore to that statement at that time, and make a different statement now?' And erred as to his ruling as to each of said questions severally."

"Eleventh Assignment of Error.

The Court erred in refusing to permit the witness, Willie Cook, to answer the following question propounded by the defendant's counsel, to-wit: 'Well then, as a matter of fact, haven't you strengthened up your testimony for the purpose of trying to convict these people?'"

Again we think it advisable to copy that portion of the cross-examination of the witness upon which these assignments are based. The witness was still being interrogated as to what took place between her and the defendant. "Q.

Miss Willie, don't you know that he never drew any knife on you? A. I do know that he did draw it on me before we got back home before we started back, we weren't but two or three blocks from home. It was open, I swear it was open. I testified in this case once before. Q. Didn't you swear before when you were sworn as a witness in this case that you didn't know whether this knife was open or shut? A. I swore it was open, as well as I remember. Q. You didn't answer my question—didn't you swear you didn't know whether it was open or not? *The Court*: She swore it was open as well as she remembers, Mr. Price. *Mr. Price*: I don't want to be captious, but it seems to me counsel for the State should raise the objection. *The Court*: You can't be captious in this court. *Mr. Price*: I don't want to be captious, I don't think I am asking any questions that are immaterial, I try not to      *      * *The Court*: She says as well as she recollects it was open; that is a full and complete answer to your question. *Mr. Price*: (Reading from former testimony) As a matter of fact, weren't you asked this question: 'Question—Did he make any threats before he got out?' and you answered that question: 'Made one just before we got home.' 'Question—What was that?' 'Answer: He asked me if he hadn't treated me as a gentleman. He had his knife in his hand. Question: He had his knife in his hand? Answer: Yes, sir. Question: Was it open? Answer: I don't know whether it was open or not. Question: He asked you that with his knife in his hand? Answer: Yes, sir.' Q. Is that what you swore to before? A. As well as I remember, I said it was open, I don't remember ever saying it was closed. Q. Then you don't know whether it was open or not, do you? A. I know it was open. Q. Did you see the blade? A. Yes, I saw the blade. Q. Why did you swear

the next day after this thing occurred——— *The Court*: She need not answer that question. *Mr. Price*: I will ask the question, with the permission of the court; Why did you swear on the examining trial that you did not know whether it was open or not, if you now swear that you saw the blade? *Mr. Walker*: We object to that. *The Court*: Objection sustained. *Mr. Price*: Your Honor will note an exception. I think, may it please the court, the question is pertinent and proper; we expect to show by the stenographer what her testimony was before, and she says now it is an entirely different state-. ment. We certainly have a right to know why she changed her testimony. *The Court*: Objection has been sustained. *Mr. Price*: Your Honor will note an exception. Q. Now then you state when you got there and the lights had been put out, that Emory Tully jerked Miss Lucy Nelson out of the car. A. Yes, he jerked her out of the car. He was on the ground when he was pulling her out, he got out first. As well as I remember, he was pulling her out as he was getting out of the car. Q. Now then didn't you testify upon that same proposition upon a former examining trial to this effect: (I am now reading from page four) 'Tell me as near as you can what took place after the car stopped and the lights were turned out,' and didn't you then syear: 'Mr. Emory Tully com- menced to choking Lucy and she got away from him some way and climbed around on the other side where I was, and Bill he made her get out and then he went to drag- ging at her.' A. I don't know whether I said it or not. Q. Well, your memory was better then than it is now? *The Court*: You need not answer that. *Mr. Price*: Your Honor will note an exception. Q. Well can you tell the jury here why you have changed your testimony? *Mr. Walker*: I object to that. *The Court*: She need not

answer. *Mr. Price*: Your Honor will note an exception.
Q. Why was it, Miss Willie, that you swore that state-
ment at that time and make a different statement now?
*Mr. Walker*: We object on the same grounds. *The Court*:
You need not answer. *Mr. Price*: We think it is perti-
nent and we have the right to an answer. The court will
note an exception. Q. Now as I understand you, under
your testimony now, that Mr. Emory Tully pulled Lucy
out; is that right? A. He had hold of her, he had her
up in his arms pulling her out. Q. Then you testified
that Will Tully made her get out, and that Will Tully
pulled you out of the car over the top of the door? A.
Pulled me out of the front seat into the back seat and
fell on me, on my shoulders, then he drug me———— Q.
Yes, I heard about the shoulder business, I am talking
about the car door now. A. He drug me over the car.
Q. He pulled you out over the door? A. Yes. Q.
You are sure of that? A. Yes, I am. Q. Now then
didn't you swear when you were on the stand before as
a witness, 'That he put his hands up my dress, then
kissed me, mashed me all over the body, got me out of
the front seat on the back seat and fell over on me, on
that shoulder, and pulled me out of the car. The door
was open.' Didn't you testify to that? A. I was on the
front seat when he did that. Q. You swear now that he
got you in the back seat and fell on your shoulder in the
back seat? A. I said he fell on my shoulder before, too.
Q. He fell on it two times? A. I said before in court
that he drug me over and fell over on my shoulder. As
a matter of fact, he fell over my shoulder on the back
seat, but did not fall on my shoulder in the front seat. It
was in the back seat that he pulled me out over the car
door. He pulled me out over the top of the door. Q. Why
did you swear before that the door was open? *Mr. Walker*:

We object to that. *The Court*: She need not answer that.
Q. Well, didn't you swear before that the door was open?
He didn't pull you out over the door of it? A. I don't
remember whether I did or not. Q. Well then, as a
matter of fact, haven't you straightened up your testi-
mony for the purpose of trying to convict these people?
*Mr. Walker*: We object. *The Court*: Those are imma-
terial questions, you must not ask them. *Mr. Price*: I
think they are proper. *The Court*: I am the best judge
of material questions. *Mr. Price*: I shall stop when-
ever your Honor sees fit, and reserve an exception. *The
Court*: I am sure of that. *Mr. Price*: I don't want to
be in contempt of court, and am not going to be if I can,
but I do feel the interest of my client and shall consider
it proper until the court tells me I am wrong. Your
Honor will note an exception."

In view of what we have already said in disposing of
the preceding assignments further discussion would seem
to be unnecessary. The witness had been cross-examined
at great length and we do not see wherein the trial judge
abused the discretion vested in him in making the rulings
upon which these assignments are based.

The twelfth assignment is as follows: "The court erred
in refusing to permit, on its own motion, the witness, Wil-
lie Cook, to answer the following question propounded to
her by defendant's counsel: 'Well now, if you say you
got blood on yourself, why is it there is no blood on these
drawers, do you know?' "

The prosecuting witness was still being cross-examined,
and the bill of exceptions discloses the following proceed-
ings: "Q. He didn't bloody you any place in front,
did he? A. I didn't get it on my drawers, I got it on

my underskirt. Q. Yes, we will see about the underskirt after awhile, but we are talking about the drawers now. There was no blood on the drawers? A. They were off of me when I came to. Q. As a matter of fact, while you and Will Tully were lying down there, didn't you unbutton or have a button unbuttoned on the left side there (indicating) of the drawers? A. No sir, I don't remember lying down with him until I fainted. Q. Where was Will when you fainted? A. When I fainted he was standing up there, I have forgotten what he was doing. Q. Was he standing straight up? A. Yes, he was. Q. He didn't have his hand on you when you fainted, did he? A. I knocked against him and fell. Q. Well, then, you were not down on the ground at that time. Now as a matter of fact, Miss Willie, were you and Will not lying down on the ground there together, and didn't Will unbutton these drawers, and you consented to it, and that you then lifted up your left leg and took it out of the drawers? A. No, I never. Q. And didn't Will have his hand on your person and playing around there with you at that time? A. No, he never. Q. Well now, if you say you got blood on yourself, why is it there is no blood on these drawers, do you know? *The Court*: She need not answer that question. *Mr. Price*: Your Honor will note an exception."

Suffice it to say that no error is made to appear here. We content ourselves with what we have said in discussing previous assignments.

We now reach the thirteenth assignment. "The Court erred in sustaining the objection interposed by the State to the following question propounded by the defendant's counsel to the witness, Willie Cook, to-wit: 'Miss Cook, didn't you have a miscarriage over in Savannah? 'As a

matter of fact, didn't you write to Dr. Reynolds three or four letters from Savannah, Georgia, and tell him that you were in a family way and that he was the cause of it?' 'And didn't you have your mother write Dr. Reynolds a similar letter?' And the court erred in sustaining the objections as to each of said questions severally."

Our treatment of the second and third assignments disposes of this assignment adversely to the contention of the defendant.

The fourteenth assignment is as follows: "The Court erred in refusing to permit counsel for the defendant to interrogate the witness, Willie Cook, as to her movements and actions on the following day to that of the alleged rape, and in holding, over the objections of the defendant, that she had been sufficiently interrogated with reference thereto."

An examination of that portion of the cross-examination of the witness upon which this assignment is predicated fails to convince us, even when aided by the argument of the defendant, that the trial judge abused his discretion in controlling the detailed examination of the witness and in holding that she had been sufficiently interrogated as to the matters sought to be further inquired into.

The fifteenth assignment is abandoned.

The sixteenth, seventeenth and eighteenth assignments are as follows:

"Sixteenth Assignment of Error.

The Court erred in sustaining the objection of the State to the following question propounded by the defendant to

the witness, Lucy Nelson, to wit: 'Isn't it a fact that about the time you expected Miss Cook to visit you that you left your home one night in your stocking feet and came to Will Tully where he was in his automobile and went out with him at night into the woods in the automobile, and then after being out with him a while went to the depot,' and in refusing to permit said witness to answer said question."

## "Seventeenth Assignment of Error.

The Court erred in sustaining the objection interposed by the State to the following question propounded to the witness, Lucy Nelson, to-wit: 'And that same evening, don't you write somebody or send somebody word that they could not call that evening, that you were going out to a party with somebody else?' And in refusing to permit the witness to answer said question."

## "Eighteenth Assignment of Error.

The Court erred in sustaining the objection interposed by the State to the following question propounded to the witness, Lucy Nelson, to-wit: 'I will ask you this question, you need not answer until the court has a chance to rule—as a matter of fact, didn't Mr. McCorkindale open your room door the other night and there was a man in there with you in bed?'"

It would seem to be obvious from our discussion of preceding assignments, especially the second and third, that these errors are not well assigned. If, as we have held, the prosecuting witness could not be cross-examined along this line, then certainly another State witness could not

be so examined. See the authorities there cited, and also Adkinson v. State, 48 Fla. 1, 37 South. Rep. 522, and Baker v. State, 51 Fla. 1, 40 South. Rep. 673.

The nineteenth and twentieth assignments are as follows:

"Nineteenth Assignment of Error.

The Court erred in refusing to permit the witness, Frank Kline to answer the following question, namely: 'Now if your testimony at this trial here differs from that you gave the County Judge, which, Frank, is true?' "

"Twentieth Assignment of Error.

The Court erred in refusing to permit the witness, Frank Kline, to answer the following question, namely: 'The answers you gave to the questions put to you by Mr. McCord before the County Judge's hearing were true, were they not,' and in stating in ruling upon said question as follows, to-wit: 'He need not answer that question, he cannot be asked that question in that form. No witness can be asked as to another examination in another court whether or not it was true. It is unfair to the witness to expect him to answer the question.' "

Frank Kline was the third witness introduced on behalf of the State and testified on his direct examination that he had charge of the property on the night where the crime with which the defendant was charged was said to ave been committed, and proceeded to state what he saw and heard in connection with what occurred that night, the details of which were rather slight and of no great

moment. The substance of his testimony was to the effect that an automobile come to the place that night and after reaching there the lights were turned out and that he heard "something like a scrimmage," also a "foot race, and a squeal—hollers sort of like a lady hollering, two or three squeals." The witness was then subjected to a lengthy cross-examination, during which the questions were propounded to him, the sustaining of objections to which forms the basis for these two assignments. After a careful examination of the entire cross-examination of the witness, who was a negro, we are of the opinion that no error has been made to appear to us in the rulings of which complaint is made. The trial judge' properly held that the questions were not proper in the form in which they were propounded.

We have now reached the twenty-first assignment, which is as follows: "The Court erred in refusing to permit the witness, Theo Proctor, to answer the following question, namely: 'Would it be possible to operate that machine so as to get it out of the rut there and get it under headway at full speed, and still hold a person with one hand?' and erred in remarking, on refusing to permit the witness to answer said question, as follows: 'Well, he cannot answer that question; some men are more expert about handling cars and some men are more expert about handling women, so he cannot give his opinion about what a man can do.' "

We do not think that error has been made to appear here. As we held in Schley v. State, 48 Fla. 53, 37 South. Rep. 518, "It is the province of the trial court to determine whether or not a witness offered as an expert has such qualifications and special knowledge as to warrant

his testifying as an expert, and the decision of such trial court is conclusive upon this point, unless it appears from the transcript to have been erroneous or to have been founded upon some error in law." See also to the same effect Atlantic Coast Line R. R. Co. v. Crosby, 53 Fla. 400, 43 South. Rep. 318; Florala Saw Mill Co. v. Smith, 55 Fla. 447, 46 South. Rep. 332: Atlantic Coast Line R. R. Co. v. Dees, 56 Fla. 127, 48 South. Rep. 28. The form of the question is also objectionable. It will be observed that the witness is not asked to give his opinion either as an expert or skilled witness, but to state as a matter of fact whether or not it "would be possible" for a man to operate the machine under the circumstances stated. The realm of possibility is a vast domain comparatively unexplored and about which very little is known. As to the remark made by the trial judge concerning which complaint is made, we fully approve of our holding in Mathis v. State, 45 Fla. 46, 34 South. Rep. 287, and Lewis v. State, 55 Fla. 54, 45 South. Rep. 998, cited to us by the defendant, that "The utmost care should be used by the trial judges, especially in cases where human life is involved, not to let any expression fall, either by questions or otherwise, that is capable of being interpreted by the jury as an index of what he thinks of the prisoner, his counsel or his case," but we fail to see any reversible error in such remark.

The twenty-second assignment is: "The Court erred in refusing the request of the jury and the motion of the defendants that the jury be permitted to view the premises where it is alleged that the offense charged in the indictment was committed."

The bill of exceptions discloses that during the trial, at the close of the examination of J. P. S. Houstoun, one of

the State witnesses, the bailiff in charge of the jury stated to the court that the jury wished to look at the grounds where the crime was said to have been committed, whereupon the·court remarked "that is a matter for different consideration." At the close of the State's testimony, the defendant made the following motion: "May it please the court, before proceeding with defendant's testimony, we feel that it would be advisable for the jury to see the grounds. It is only a mile and a half from here, and we could be ready to go out in automobiles, and we think the testimony certainly would be better understood by a view." Whereupon the court stated, "I will consider that proposition, and may send them out there at the conclusion of the testimony."

At the close of the trial the following proceedings took place: *The Court*: I have considered the motion and I don't think it best to send this jury out to the locus in quo, therefore the motion will be refused. *Mr. Price*: Your Honor will note an exception. *The Court*: I will state my reason; the principal reason is that it is private property, and it has been indicated to me that there are shrubs and plants, and part of the recently planted, that might be disturbed, and that the owners of the property already, or those in charge at least, feel that there has been a good deal of attention attracted to that particular place, and I am of the opinion that they probably would rather not have the jury examine the premises. *Mr. Price*: There is a public drive way, may it please the court, where there is no possibility of getting out or affecting the shrubbery. *The Court*: I have been out there, and the gates were both locked when I went out there. I have no authority to direct anybody to unlock those gates and admit the jury to view those premises. In addition to

that, from my hearing of the testimony, I think it unnecessary for the jury to go there. I don't think it practicable for them to go there. I don't think it advisable for them to go there, and therefore the motion will be denied. *Mr. Price*: Your Honor will note an exception."

Section 3989 of the General Statutes of Florida is as follows: "The court may order a view by the jury."

We have held that the trial court is to determine the necessity for a view of the premises and that his discretion in denying a motion for such view will not be disturbed by this court, unless a clear abuse of such discretion is made to appear. Coker v. Merritt's Executor, 16 Fla. 416; Thompson v. State, 52 Fla. 113, 41 South. Rep. 899; Atlantic Coast Line R. R. Co. v. Whitney, 65 Fla. 72, 61 South. Rep. 179; Chancey v. State, 68 Fla. 93, 66 South. Rep. 430. See also the note on page 368 of 42 L. R. A., where numerous authorities will be found collected.

The twenty-third assignment is as follows: "The Court erred in charging the jury, upon its own motion, as follows, to-wit: The evidence of the reputation of the prosecuting female witness for chastity has been admitted for your consideration for the purpose of showing the probability of the consent on the part of the female witness claiming that she had been assaulted, it being more probable that a female of unchaste life would consent to an act of carnal intercourse than one whose past life was without blemish. This class of evidence, even if it is shown that the prosecuting witness' character for chastity is bad, goes only to the question of whether or not the woman consented."

44—Vol. 69.

This is only one paragraph of the general charge given by the court. We have repeatedly held that "in determining the correctness of charges and instructions, they should be considered as a whole; and if, as a whole, they are free from error, an assignment predicated on isolated paragraphs or portions, which, standing alone, might be misleading, must fail.

In passing upon a single instruction or charge, it should be considered in connection with all the other instructions and charges bearing on the same subject; and if, when thus considered, the law appears to have been fairly presented to the jury, an assignment predicated upon the giving of such instruction or charge must fail, unless under all the peculiar circumstances of the case the court is of the opinion that such instruction or charge was calculated to confuse, mislead or prejudice the jury." See Davis v. State, 54 Fla. 34, 44 South. Rep. 757, and Lewis v. State, 55 Fla. 54, 45 South. Rep. 998. We are of the opinion that this assignment has not been sustained. We have examined Anderson v. State, 104 Ind. 467, 4 N. E. Rep. 63, and State v. Duffey, 128 Mo. 549, 31 S. W. Rep. 98, cited to us by the defendant, but see no occasion for commenting thereon. We would again refer to Rice v. State, 35 Fla. 236, 17 South. Rep. 286, 48 Amer. St. Rep, 245, and our comments thereon in the former part of this opinion. See also the discussion in Wharton's Criminal Law (11th ed.) pages 865, 923 and 951, and the authorities there cited.

The twenty-fifth and twenty-sixth assignments, which are based upon requested and refused instructions, are abandoned, the defendant stating in his brief that such requested instructions "were substantially covered by other charges given by the court."

The twenty-fourth, twenty-seventh, twenty-eighth, twenty-ninth and thirtieth assignments are also based upon requested and refused instructions, which we do not copy, though we have carefully examined them, aided by the defendant's brief in support thereof. We have already protracted this opinion in treating the other assignments. We are of the opinion that the refusal of none of the requested instructions constitutes reversible error. We think that in so far as they state correct principles of law applicable to the case being tried they were covered by the charge given by the court and other requested instructions which were given. The general charge of the court would seem to have pretty fully embodied the law applicable to the case. In addition thereto, a number of special instructions, in all a dozen we believe, were given, so the jury would seem to have had all the requisite points of law presented.

The last assignment is based upon the refusal of the motion for a new trial. The only ground of this motion which is urged before us is the sufficiency of the evidence to support the verdict. Although there are sharp conflicts therein upon material points, after carefully examining the same we are of the opinion that the jurors, acting as reasonable men, might well have found the defendant guilty upon the evidence adduced. Having reached this conclusion, following our repeated rulings, we must refuse to disturb the action of the trial judge in denying such motion. See Florida East Coast Ry. Co. v. Geiger, 66 Fla. 582, 64 South. Rep. 238.

The judgment will be affirmed.

TAYLOR, C. J., AND COCKRELL AND ELLIS, JJ., concur.

WHITFIELD, J., takes no part.