LUCIA WILKINS' ADMR. *v.* W. W. BROCK AND L. K. R. ROSSELLE.

May Term, 1908.

Present: ROWELL, C. J., TYLER, MUNSON, and WATSON, JJ.

Opinion filed July 27, 1908.

*Judgments—Default Against One of Several Defendants—Effect
—Insufficiency of Bill of Exceptions—Physicians and Sur-
geons — Osteopaths — Malpractice — Proof — Requisites —
Error of Judgment—Evidence—Hearsay—Statements of
Patient to Physician Making Diagnosis—Admissibility—
Evidence in Rebuttal—Witnesses—Competency—Transac-
tion with Decedent—"Contract in Issue"—New Trial—
·Newly Discovered Evidence—Sufficiency.*

In an action against two physicians for malpractice, where one defaults
and the other pleads to issue, the jury that tries the issue should
assess damages against both.

A bill of exceptions should show what the exceptions are; but if it
does not, and the transcript is referred to for them, they will be
noticed by the Supreme Court only so far as counsel specifically
point them out in their brief.

In an action by an administrator against a physician for malpractice
on ˙plaintiff's intestate, defendant's evidence tended to show that
from 1890 to September, 1898, when he began to treat the intestate,
she was at times infirm in health, unable to walk, had symptoms
of paralysis of the legs, etc., the witnesses specifying the par-
ticular times to which their testimony related. Plaintiff then
offered testimony to show that at times during said period the
intestate appeared to be well.and not afflicted as defendant's wit-
nesses said she was, but the attention of none of plaintiff's wit-
nesses was called to the specific times to which defendant's wit-
nesses testified. *Held* that the offered testimony was admissible
in rebuttal, for as it tended to show that the intestate's condition
was different at other times during the period covered by de-
fendant's witnesses than at the times they specified, it tended
to show that her condition was different at those times.

In an action by an administrator against a physician for malpractice on plaintiff's intestate, it was proper to allow a physician testifying for plaintiff to repeat statements, made to him by the intestate while he was examining her to ascertain her condition, concerning her past suffering, so far as such statements were essential to a correct diagnosis of her case, as such statements have no hearsay quality, but are treated merely as observed facts, forming part of the physician's data, and bearing on the weight of his opinion, regardless of their correctness; but the statements were inadmissible as tending to show the fact of such pain, being hearsay on that point.

Under P. S. 1590, providing that when an executor or administrator is a party, the other party cannot testify in his own favor, unless the "contract in issue" was originally made with a person living and competent to testify, the words "contract in issue" relate to the issues made by the evidence, as well as to those made in the pleadings; and where, in an action by an administrator against a physician for malpractice on plaintiff's intestate, the declaration alleged that the intestate employed defendant to treat her, but it appeared by the evidence that plaintiff himself made the contract, defendant could testify to the contract, but was not a competent witness generally, for the purpose of the statute is to preserve equality of testimonial competency, beyond which the exception does not go, nor the exclusion of the statute operate.

Neither an exception to the striking out of an answer in a deposition, nor exceptions to the exclusion of certain other evidence, are considered, because the bill of exceptions, of which the transcript is made a part, does not show the ground of exception, and nothing is pointed out in the transcript to show it.

To warrant a finding that a physician is guilty of malpractice, there must be medical expert testimony to show it; and it is not sufficient to show merely that the treatment was injurious.

Since osteopathy is a school of practice distinct from other medical schools, in an action against osteopaths for malpractice, after the court gave the jury the rule as to the care and skill defendants were bound to exercise if they treated the case as osteopaths, it was error to give them the rule applicable to the medical profession generally, if they found that defendants did not treat the case as osteopaths, there being no evidence tending to show that de-

fendants treated the case otherwise than as osteopaths, nor that any other kind of treatment was contracted for.

In an action against osteopaths for malpractice, defendants' treatment must be tested exclusively by the principles and practice of the school of osteopathy.

A physician's error of judgment in the treatment of a case does not amount to malpractice, unless so gross as to be inconsistent with due care; nor can malpractice be inferred from the mere results of the treatment.

In an action by an administrator for malpractice on his intestate, plaintiff's testimony as to a talk he and the intestate had with defendant, in which the intestate claimed that defendant hurt her at the last treatment, did not show malpractice, but at most only an implied admission that defendant might have hurt her through overrating her strength; and hence defendant will not be granted a new trial, after verdict for plaintiff, because of newly discovered evidence that the intestate's condition after her last treatment was not due to that, but to a fall from a car while returning from the treatment.

It is sometimes better to defer a petition for a new trial until the case is disposed of on the exceptions, since it can be brought at any time within two years after the rendition of the original judgment.

CASE AND TRESPASS against physicians for malpractice. The defendant Rosselle defaulted. The defendant Brock pleaded the general issue. Trial by jury at the March Term, 1907, Chittenden County, *Hall, J.*, presiding. At the close of all the evidence the count in trespass was ruled out, there being no evidence to support it; and defendant Brock moved for a directed verdict in his favor, for that there was no evidence that the intestate received other than the "usual treatment given by osteopaths in the circumstances mentioned in the declaration and detailed in the evidence." Motion overruled, to which defendant Brock excepted. Verdict and judgment for the plaintiff. Defendant Brock excepted. The opinion states the case.

Defendant Brock also brought to the Supreme Court for Chittenden County at its May Term, 1908, his petition for a new trial on the ground of the newly discovered evidence referred to in the opinion, which petition was heard with the exceptions on evidence taken and filed.

*R. M. Harvey,* and *E. C. Mower* for the defendant.

It is the duty of professional men to exercise ordinary care and skill and it will be presumed that such care and skill has been exercised in the absence of proof to the contrary, and negligence cannot be presumed but must be affirmatively proven. Best on Presumptions, 68; *Jacksonville St. Ry. Co.* v. *Chapell,* 21 Fla. 175; *Laten* v. *Sargent,* 59 Am. Dec. 388, (Notes); *Baird* v. *Marjord,* 29 Iowa 531; *State* v. *Housekeeper et al.,* 70 Md. 162, and cases cited in note 2 L. R. A. 587. The burden of proof is always on the plaintiff to show a want of proper knowledge and skill. The degree of care and skill which the defendant in cases of this kind is bound to possess and exercise must be an average of those exercised by members of the same school. *Boman* v. *Woods,* 1 Greene (Iowa) 441; *Patten* v. *Wiggins,* 51 Me. 594; *White* v. *Carroll,* 42 N. Y. 161; *Williams* v. *Popleton,* 3 Ore. 159; *Landon* v. *Humphrey,* 9 Conn. 209; *Lawson* v. *Conoway,* 18 L. R. A. 627. Physicians and surgeons are bound to use their best judgment as to the nature of the disease and the proper mode of its treatment, but are not liable for errors in judgment where they exercise reasonable care and diligence. *Dale* v. *Donnellson Lumber Co.,* 48 Ark. 188; *Maller* v. *Boynton,* 152 Mass. 443; *Williams* v. *Gilman,* 71 Me. 22; *Van Hooser* v. *Berghoff,* 80 Mo. 487.

Defendant Rosselle's deposition should have been admitted. If all of plaintiff's evidence had been to the effect that the intestate was injured at the time in question by defendant Rosselle, that would not render the witness incompetent, for that was not the issue on trial. Missouri General Statutes 1372, para. 1; *Looker* v. *Davis,* 47 Mo. 140; *Bradley* v. *West,* 68 Mo. 69; Mass. Gen. Stat. c. 131, p. 14; *Bigelow* v. *Huyer,* 3 Allen 243; *Gay* v. *Gay,* 5 Allen 157; *Jones* v. *Walcott,* 15 Gray 541; *Granger* v. *Bassett,* 98 Mass. 462; *Barnes* v. *Dow,* 59 Vt. 530; *Walling* v. *Newton,* 59 Vt. 684; *Foster's Executors* v. *Dickinson,* 64 Vt. 233; *In re Buckman's Will,* 64 Vt. 313; *Clark* v. *Clark,* 54 Vt. 489; *In re Wheelock's Will,* 76 Vt. 235; *Morse* v. *Low,* 44 Vt. 561; *Downes* v. *Belden,* 46 Vt. 674; *Taylor* v. *Findley,* 48 Vt. 78; *Hollister* v. *Young,* 41 Vt. 156; *Cole* v. *Shurtliff,* 41 Vt. 311; *Bank* v. *Schofield,* 39 Vt. 590; *Hollister* v. *Young,* 42 Vt. 403.

There was no evidence on which plaintiff was entitled to go to the jury.   There is no evidence that what defendants did was not proper and usual and skillful treatment, and the contrary cannot be inferred from the results alone.   *Georgia No. Ry. Co.* v. *Ingram,* 114 Ga. 639; *Pettigrew* v. *Lewis,* 46 Kan. 78; *Craigue* v. *Chambers,* 17 Ohio St. 253; *Wells* v. *World's etc. Ass'n.,* 9 N. Y. 452; *Haire* v. *Reese,* 7 Pa. 138; *Wurdeman* v. *Barnes,* 92 Wis. 206; *Piles* v. *Hughes,* 10 Iowa 579; *Woods* v. *Barker,* 49 Mich. 295; *Davis* v. *Spicer,* 29 Mo. App. 279; *McKee* v. *Allen,* 94 Ill. App. 147; *Martin* v. *Courtney,* 91 N. W. Rep. 481; *Bellinger* v. *Craigue,* 31 Barb. 534; *Sims* v. *Parker,* 41 Ill. App. 284; Cooley on Torts, 777; *Hollzman* v. *Hoy,* 118 Ill. 534; *Styles* v. *Tyler,* 64 Conn. 465; *Gillette* v. *Tucker,* 93 Am. St. Rep. 657; *Hibbard* v. *Thompson,* 108 Mass. 286; *Ewing* v. *Goode,* 78 Fed. 442; *Wood* v. *Wyeth,* 94 N. Y. Sup. 360; *Sheldon* v. *Wright,* 80 Vt. 298.

It was error to allow the physician testifying for plaintiff to relate what the intestate told him as to past pain, while he was examining her to ascertain her condition; only her condition at the time of the examination could be proven by her declaration.   *State* v. *Howard,* 32 Vt. 380; *Kent* v. *Lincoln,* 32 Vt. 591; *Earl* v. *Tupper,* 45 Vt. 275; *Drew* v. *Town of Sutton,* 55 Vt. 586; *State* v. *Davidson,* 30 Vt. 377; *State* v. *Fournier & Cox,* 68 Vt. 262; *Hathaway* v. *National Life Ins. Co.,* 48 Vt. 335; *Barber* v. *Merriman,* 11 Allen 322.

But such statements of past pain made by a patient to her examining physician, if admissible, can only be used to show the data on which the physician relied in making his diagnosis, so that the jury may judge of the value of his opinion; but such statements can never be used to establish the fact of such past pain, they being mere hearsay on that point.   *Quaife* v. *Chicago etc. R. R. Co.,* 48 Wis. 513; *Cleveland etc. Ry. Co.* v. *Newell,* 104 Ind. 269; *Louisville etc. R. R. Co.* v. *Falvey,* 104 Ind. 416; *Bacon* v. *Charlton,* 7 Cush. 586; *A. T. & S. F. R. R. Co.* v. *Frazier,* 27 Kan. 463; *Williams* v. *Great Northern Ry. Co.,* 68 Minn. 55; *Morrissey* v. *Ingham,* 111 Mass. 63; *Emerson* v. *Lowell Gas Light Co.,* 6 Allen 146; *Chapin* v. *Marlboro,* 9 Gray 244; *Roosa* v. *Boston Loan Co.,* 132 Mass. 439; *Ill. Cen. R. R. Co.* v. *Sutton,* 42 Ill. 438, 92 Am. Dec. 81; *Birmingham etc. R. R. Co.* v. *Hale,* 90 Ala. 8, 24 Am. St. Rep. 748; *Rowland* v.

*Philadelphia etc. R. R. Co.,* 63 Conn. 415, 28 Atl. 102; *Dundas v. Lansing,* 75 Mich. 503; *Knox* v. *Town of Wheelock,* 54 Vt. 150.

The rule is well settled that a physician is entitled to have his treatment of his patient tested by the rules and principles of the school of medicine to which he belongs and not by those of some other school. *Force* v. *Gregory,* 63 Conn. 161, 38 Am. St. Rep. 371; *Nelson* v. *Harrington,* 7 Am. St. Rep. 900.

*V. A. Bullard,* and *B. E. Bullard* for the plaintiff.

It was proper to admit evidence of the intestate's health before and immediately after the treatment complained of. 1 Wig. §§190-225; *Hall* v. *St. Joseph Water Co.,* 48 Mo. App. 356; *Railway Co.* v. *Reading Eckert,* (Pa.) 4 Atl. 530; *Hewitt* v. *Eisenbart,* 36 Neb. 794; *Block* v. *Milwaukee Railway Co.,* 89 Wis. 371.

, The test of defendants' treatment and skill, was whether it accorded with the ordinary skill of physicians in good standing practicing in the vicinity, not whether it was in accordance with the principles of the school of osteopathy. *Nelson* v. *Harrington,* 72 Wis. 591; *Granger* v. *Still,* 187 Mo. 197; *Logan* v. *Welkmer,* 64 L. R. A. (Mo.) 969; *Gerrish* v. *Cummings,* 4 Cush. 391.

The defendants were, under the statute, incompetent to testify in their own behalf. *Morse* v. *Lowe,* 44 Vt. 561; *Gregg* v. *Willis,* 71 Vt. 313.

It was proper for the physician who examined the intestate to repeat her statements then made to him regarding past pain and previous condition of health. That information was necessary to enable the physician to make a proper diagnosis. *State* v. *Foyner,* 68 Vt. 262; *Stone* v. *Chicago Ry. Co.,* 88 Wis. 98; *Roose* v. *Loaning Co.,* 132 Mass. 439; *St. Louis etc. Ry. Co.* v. *Desny,* 89 S. W. 786; *Fort* v. *Brown,* 46 Barker 366; *Newman* v. *Dodson,* 51 Tex. 91; *Atchison etc. Ry. Co.* v. *Clark,* (Tex.) Civil App. 32 S. W. 262; *Ry. Co.* v. *Snyder,* 117 Ind. 435; *Chicago Ry. Co.* v. *Spiker,* 134 Ind. 380; *Ashton* v. *Detroit Ry. Co.,* 78 Mich. 587; *Gulf Ry. Co.* v. *Brown,* 40 S. W. 608; *Mo. Ry. Co.* v. *Roose,* 49 S. W. 183; *St. Louis etc. Ry. Co.* v. *Burke,* 81 S. W. 774.

A new trial should not be granted where the new evidence relied on consists of admission made by the opposite party. *Guyot* v. *Butts,* 4 Wend. 579; *Fowler* v. *Kelley,* 43 N. Y. 380; *Smith* v. *Belt,* 31 Ill. 96.

A new trial on the ground of newly discovered evidence is properly refused, where the affidavit supporting the application is contradicted by the deposition and evidence of the other party. *Thompson* v. *Thompson,* 88 Cal. 110; *Coast Line Ry. Co.* v. *Boston,* 83 Ga. 38; *Fleming* v. *Hollenback,* 7 Barb. 271; *Lindsey* v. *Danville,* 45 Vt. 72; *Morgan* v. *Houston,* 25 Vt. 590; *Briggs* v. *Gleason,* 27 Vt. 114; *Waters* v. *Langdon,* 16 Vt. 570; *Lewis* v. *Roby,* 79 Vt. 487.

ROWELL, C. J. This is an action for malpractice as physicians. The declaration contains a count in trespass for assault and battery, and two counts in case. At the close of all the testimony, the count in trespass was ruled out, there being no evidence to support it, and the case submitted only on the other counts.

The defendant Rosselle let judgment go by default. The defendant Brock pleaded not guilty, and the issue was tried by jury and found for the plaintiff, and damages assessed against the defendants jointly by direction of the court, the defendant Rosselle not appearing. To this the defendant Brock excepted, and objects that Rosselle was not a party on trial, and stood as though she had never been a party to the action, and that he was prejudiced by bringing thus prominently before the jury that she had admitted her guilt, as the jury would be likely to think that as she was guilty he was also, as they joined in the treatment complained of. But here was no error, for the judgment against Rosselle was interlocutory, not final, and therefore she remained a party for the purpose of assessing damages; and though she was defaulted and Brock found guilty, yet the final judgment was to be joint, for they were declared against jointly, and there could be but one assessment of damages, and that assessment had to be by the jury that tried the issue between the plaintiff and Brock. Mr. Tidd says that in an action against several, if some let judgment go by default and others plead to issue, the jury that tries the issue assesses damages against all. 2 Tidd's Pr., 3d Am. ed., 894. So in *Heydon's Case,* 11 Co.

[5a], which was trespass for assault and battery against three, two pleaded to issue and tried separately, and damages in different amounts assessed. One let judgment go by default, and a writ of inquiry of damages was awarded on the roll but not issued. Thereupon a great question was moved, and depended for divers terms, how, and against whom, and for what amount, judgment should be entered; and at last, on consideration had of the precedents and the books, judgment was entered against all for the sum first assessed, and that judgment was affirmed on error. So in 1 Saund. 207a, note (2), it is said that where several are jointly charged in an action of trespass and plead jointly, or sever in their pleas, or one lets judgment go by default, and the jury assesses several damages, the verdict is wrong and the judgment erroneous. But that the plaintiff may cure the verdict by entering a *nol. pros.* as to all the defendants but one, and taking judgment against him only. So in *Bohun* v. *Taylor,* 6 Cow. 313, it is said that where there is but one trespass, and all are found guilty of the whole, the damages must be entire, though the defendants sever, and one lets judgment go by default. And in *Gerrish* v. *Cummings,* 4 Cush. 391, it is said that in an action of trover there can be but one assessment of damages; that though one defendant is defaulted and the other found guilty, yet there must be a joint judgment, and that the verdict, which is to fix the amount of damages, fixes it as well for the party defaulted as for the party that pleaded.

The plaintiff claimed, and the testimony on his part tended to show, that about the first of September, 1898, the intestate was in a condition of exhaustion of the nervous system, a functional disease called neurasthenia, which had been coming on for three months, and that the defendant treated her therefor about six weeks, ending the 12th of October following; that the last treatment was such that it caused "general myelitis from traumatic origin," an organic disease of the spinal cord or its membranes, which betrayed itself at once by pain in the back, inability to walk without assistance, and the like, and from which she thenceforth languished, and languishing died in March, 1900.

The plaintiff introduced in his opening the testimony of a large number of witnesses, some of whom are named in the bill of exceptions and some not, but referred to as "many others," for the purpose of showing in a general way the good health of

the intestate for twenty years or more prior to three months next before the defendant began to treat her, and her bad health ever after her last treatment. The exceptions say that ''this testimony was admitted under the circumstances and subject to the objections and exceptions appearing in the record,'' and a transcript of the testimony is referred to and made a part of the bill of exceptions, but the bill affords no other means of finding out what those circumstances, objections, and exceptions are. Nor do the defendants' counsel aid us in this respect, for they point out nothing to enable us to find what the transcript contains on the subject, but leave us to search it for ourselves. But this Court does not search the transcript for exceptions referred to in this way. The bill of exceptions should show what the exceptions are, and would if drawn according to the rule in such case made and provided; but if it does not, and the transcript is referred to for them, they will be noticed only so far as counsel point them out specifically in their brief.

To meet the testimony thus introduced, the defendant introduced testimony tending to show that from 1890 to September, 1898, when he began to treat her, the intestate was at times infirm in health, unable to walk, had symptoms of paralysis of the lower limbs, backache, and total disability at times; was injured in a carriage accident before 1890, and suffered in the same way from that; was injured by overwork in 1892-93, which rendered her unable to walk without assistance for a time; that at times after that, up to September, 1898, she walked feebly and with a shuffling gait, and complained of inability to walk, and of pain in her back and limbs; that in the last few months before September, she was unable to walk at all without taking hold of things, shuffled and scuffed her feet, and was unable to work, which was her condition when the defendant began to treat her; and that she improved under his treatment to such an extent that she came to his office alone the last time she was treated, and went away alone, walking to the car. In giving this testimony, the witnesses specified the particular times and occasions to which it related.

The plaintiff called in rebuttal several witnesses who testified to times and occasions from 1880 to 1898 when the intestate appeared to be well, and not afflicted as the defendants' witnesses said she was. But the attention of none of the plaintiff's wit-

nesses was called to the specific times to which the defendants' witnesses testified; and because it was not, it is objected that their testimony was not admissible as rebutting. This is the only objection. But that is not determinative of the character of the testimony in this respect, for if it tended to show her condition to be different at other times during the period covered by the defendants' witnesses, it tended to show it different at those times, and that it did thus tend cannot be doubted.

The plaintiff called a physician who examined the intestate in February, 1900, to ascertain her condition, and who testified that in making his diagnosis it was necessary for him to know the history of her trouble, and that consequently he elicited from her that her pain at that time, and for some weeks before, was irregular, but located in her back; that the first severe pain she had there was in September or October, 1898, and started suddenly and severely following some treatment, and continued to be severe for over a year; that she received an extremely severe and sudden injury upon her back in September or October, from the effects of which she fainted, followed by unconsciousness, and was unable to walk directly after it. The defendant did not object to the admission of what the intestate said about present pain, but objected to what she said about past pain, when it began, etc., as being "historic narrative." But the court held it admissible, without indicating what use could be made of it, and overruled the objection, to which the defendant excepted.

If some of the statements were admissible, we shall not consider whether others were or not, as the position taken by the defendant does not require it, for he contends generally that while her statements and complaints of present pain and suffering were competent to show her condition at that time, it was error to go beyond that, and permit the witness to narrate in detail her statements as to past pain, when it began, its origin, nature, severity, and attendant effects, covering more than a year before his examination.

That some of these statements were admissible is clear, for they were of past pain and suffering, and when that information is necessary to a correct diagnosis, statements of it may be testified to by the physician as forming a part of the basis of his opinion. *Knox* v. *Wheelock,* 54 Vt. 150; *Hathaway* v. *National*

*Life Ins. Co.,* 48 Vt. 335. In such cases, the statements of the patient have no hearsay quality, but are treated merely as observed facts, forming part of the physician's data, and bearing upon the weight of his opinion, without regard to their correctness or incorrectness. But here the court went further, and allowed the statements of past pain to be argued to the jury as evidence tending to show the fact of such pain; and in its charge it allowed the jury to consider all those statements, with no other limitation than that they must not be weighed as tending to show that the intestate received an injury from the defendant. That was error, for when those statements were used as direct testimonial evidence of the truth of what they asserted, they were carried beyond their legitimate scope, for as to that, they were nothing but hearsay. 3 Wig. Ev. §1720.

The counts in case allege that the *intestate* employed the defendants to treat her. The plaintiff testified in his opening, however, and it appeared without question during the whole trial, that *he himself* made the contract, and with the defendant Brock alone, and he told what the contract was. The defendant Brock offered to testify in his own favor to the contract, claiming that it was different in some respects from what the plaintiff testified it was. But the court excluded him as incompetent under the statute. This was error, for the contract was originally made with the plaintiff acting for himself and not for the intestate, who was his wife, and so he was a party to it, and was living and competent to testify, and had testified. This brought the matter within the exception of section 1590 of the statute, which provides that when an executor or administrator is a party, the other party shall not be permitted to testify in his own favor, "unless the contract in issue was originally made with a person who is living and competent to testify." The words, "contract in issue," as there used, mean the contract in dispute or in question, and relate as well to the issues made by the evidence as to the issues made by the pleadings; and the contract here in question was brought forward by the plaintiff and made an issue by his evidence, but whether necessarily or not we need not inquire, for it was treated as necessary and material, both by the plaintiff and the court in its charge. Brock, therefore, was a competent witness to the contract. But that did not make him a competent witness generally, for the purpose of the

exception is, not to shut the mouth of the defendant as to contracts made with parties still living and competent to testify, but to preserve equality of testimonial competency, beyond which the exception does not go, and the exclusion of the statute is operative.

Brock also offered to testify to certain other things as collateral. But they were not collateral, but bore directly on the cause of action in issue and on trial, and antedated the death of the intestate. The same is true of the defendant Rosselle's deposition in this respect; and as she is a party to the action, and not a party to the contract between the plaintiff and Brock, the deposition was properly excluded.

An answer to a question in H. P. Hinckley's deposition, introduced by the defendant, was stricken out, to which the defendant excepted. But as the bill of exceptions does not show on what ground, and nothing is pointed out in the transcript to show it, the exception is not considered.

For the same reason we do not consider the exceptions to the exclusion of Brock's diploma, and his offer to show that Rosselle is a graduate of The American School of Osteopathy at Kirksville, and had the reputation of being, and was in fact, a competent and skillful practitioner of osteopathy.

The defendant Brock's motion for a verdict should have been sustained, for to warrant the finding of malpractice, it was necessary to have medical expert testimony to show it, and there was none; but, on the contrary, there was such testimony tending to show that the treatment was proper, and according to the principles and practice of osteopathy. It was not enough to show merely that the treatment was injurious, but it was necessary to go further, and show by competent witnesses that the requisite care and skill was not exercised in giving it,—for that was the only question, according to the plaintiff's brief,—and that was not done. Such is the doctrine of all the cases. *Sheldon* v. *Wright,* 80 Vt. 298, 67 Atl. 807; *Sims* v. *Parker,* 41 Ill. App. 284; *De Long* v. *Delaney,* 206 Pa. St. 226, 55 Atl. 965; *Feeney* v. *Spalding,* 89 Me. 111, 35 Atl. 1027.

This virtually disposes of the question made on the admission of the testimony of the plaintiff's medical expert given in answer to certain hypothetical questions, for the testimony was not offered for the purpose of showing that the treatment was

not proper osteopathic treatment, but only to show that it was injurious, which did not tend to show malpractice without more, and there was no more.

The second count alleges that the defendants professed to be practicing the art of healing and curing sick and diseased people after and by the methods of the school of osteopathy, and that the intestate employed them "as such healers."

The third count declares against them generally as physicians and surgeons, without more.

No claim is made in argument that osteopathy is not a distinct school of practice, and could not well be, for the statute recognizes it as such by making special provisions regulating it. There was no testimony tending to show that the defendants treated the intestate otherwise than as osteopaths; nor that any other kind of treatment was contracted for, expected, desired, or given. But the court, after giving the jury the rule as to the care and skill the defendants were bound to exercise if they treated the case as osteopaths, went on to give them the rule applicable to the profession generally if they found that the defendants did not treat the case as osteopaths. This was error, for there being no evidence that they treated the case otherwise than as osteopaths, and osteopathy being a distinct school of practice, the treatment was to be tested by the principles and practice of that school, and not by the principles and practice of any other school, nor of the profession generally; and the testimony on the part of the defendants tended to show that the treatment complained of was according to the principles and practice of osteopathy, and also tended to show what those principles and that practice are. It was also error because it submitted an issue dehors the evidence. Indeed it is not really contended that this was not error, but claimed that there is no exception sufficiently explicit to be available. But one quite sufficient is pointed out in the transcript.

The gist of the petition for a new trial on the ground of newly discovered evidence is, that the condition of the intestate after her last treatment was not due to that, as the plaintiff claimed, but due to a fall she got in alighting from the electric car on her return from that treatment, about which nothing was shown on trial.

The defendants' counsel say in their brief, that if it be held that the testimony objected to should have been excluded for the reasons assigned, perhaps the newly discovered evidence would not be material, because there would be no occasion to show the true cause of that condition; but that even then there would remain the plaintiff's testimony of a conversation he and the intestate had with Brock, in which she claimed that he hurt her at the last treatment, and that the newly discovered evidence would be applicable and pertinent to that, and so would stand for consideration. But that testimony did not tend to show malpractice, for the most that can be claimed for it is an implied admission by Brock that he might have hurt her then by reason of overrating her strength to endure the treatment. But error of judgment is not enough, unless it is so gross as to be inconsistent with due care; and here is nothing to show that, for it could not be inferred from results alone. Therefore there is nothing left to which the newly discovered evidence can apply, and hence there is no ground for considering the question of its sufficiency.

In cases like this, the bringing of such a petition might sometimes well be deferred until the case is disposed of on the exceptions, as it can be brought at any time within two years after the rendition of the original judgment.

*Judgment reversed, petition dismissed with costs, and cause remanded.*