C. E. Foster v. L. Elmer Thornton.

152 So. 667.
Division B.
Opinion Filed August 10, 1933.
Petition for Rehearing Granted September 18, 1933.
Opinion on Rehearing Filed February 9, 1934.

*Farris & Wilensky,* for Plaintiff in Error;
*Stockton, Ulmer & Murchison,* for Defendant in Error.

Buford, J.—Plaintiff in error was defendant in the court below in a suit instituted by defendant in error for damage resulting from the death of Mrs. Thornton, it being charged in the declaration in effect that Dr. Foster on the 22nd day of January, 1932, and prior thereto, held himself out to the public as capable of treating persons afflicted with diseases and bodily ailments, etc., without the use of medicine or drugs by a form or method of treatment peculiar to a class of practitioners to which the defendant belonged and known to the public as Chiropractors; that he undertook to treat plaintiff's wife who was suffering from certain disorders and that such undertaking by him was for com-

pensation to be paid for such services and treatment; that he undertook as a chiropractor to attend, treat and care for the said patient and that he treated her in an unskillful, careless and negligent manner, whereby the patient was fatally injured, suffered great pain of mind and body, and from which injury she languished and died.

The record shows that Mrs. Thornton had been suffering for years with severe headaches; that she had been treated by numerous medical doctors; that she experienced no relief and that finally she consulted Dr. Foster. Dr. Foster undertook to treat Mrs. Thornton and gave her five chiropractic adjustments, one each on five consecutive days, the first four of which appeared to be helpful. During, or at the end of the fifth adjustment, Mrs. Thornton suffered great pain, complained of pains in her neck and head. A medical doctor was called into Dr. Foster's office and administered morphine. Later another medical doctor administered more morphine. The patient became unconscious, from some cause. She was taken to her home in an ambulance, remained unconscious for a considerable time; continued to suffer with pains in her neck and head and about two weeks after the fifth adjustment she died.

The evidence is quite sufficient to have warranted the jury in reaching the conclusion that her death resulted from the chiropractic adjustments, although this fact is not established to the exclusion of every other reasonable hypothesis. It is not necessary for it to be so established. But, the evidence fails to show that the adjustment to which the injury causing death may be attributed was done in an unskillful, careless or negligent manner.

The science of chiropractic treatments is recognized as embracing a proper method for the treatment of many human ills and ailments. The chiropractic method of treatment of human beings for the cure of ills and ailments is

recognized by the laws of the State of Florida and those who practice that method of treating human beings are granted certificates and license to practice that method of treatment, just as physicians of other schools who practice other methods of treatment are granted certificates and license to practice the treatment of ills and ailments according to the methods of other schools.

That a patient dies while undergoing an operation by a surgeon, although the operation may be the immediate cause of death, is not of itself sufficient to prove that the surgeon was performing the operation in a careless, negligent or unskillful manner. That a patient dies from the effects of medicine administered by a medical physician does not of itself prove that the medicine was administered in a careless, negligent or unskillful manner. It may hardly be presumed that a chiropractor or an eclectic physician would be a competent witness to qualify as an expert in surgery, to be heard to give his opinion as to whether or not the surgical operation above referred to was negligently, carelessly or unskillfully performed. Where expert evidence is required to prove that what is recognized as a scientific treatment or operation was negligently, carelessly or unskillfully performed the witness must qualify as having expert knowledge of the correct and proper manner and method of administering the particular treatment which is charged to have been carelessly, negligently or unskillfully performed. An honest, conscientious and able chiropractor might conscientiously believe that the introduction of strychnine or arsenic into the human system for the treatment of those ailments would demonstrate gross carelessness for the welfare of the patient. While just as honest and able physician of the medical school might be quite certain that the introduction of such drug into the

system was really the proper method of treating the patient at that time.

The law appears to be well settled in accord with the enunciations delivered by Judge Taft, when sitting as Judge of the Circuit Court of the Southern District of Ohio, in Ewing, *et al.*, v. Goode, 78 Fed. 422, wherein he said:

"Before the plaintiff can recover, she must show by affirmative evidence—first, that defendant was unskillful or negligent; and, second, that his want of skill or care caused injury to the plaintiff. If either element is lacking in her proof, she has presented no case for the consideration of the jury. The naked facts that defendant performed operations upon her eye, and that pain followed, and that subsequently the eye was in such a bad condition that it had to be extracted, establish neither the neglect and unskillfulness of the treatment, nor the causal connection between it and the unfortunate event. A physician is not a warrantor of cures. If the maxim *'Res ipsa loquitur'* were applicable to a case like this, and a failure to cure was held to be evidence, however slight, of negligence on the part of the physician or surgeon causing the bad result, few would be couargeous enough to practice the healing art, and they would have to assume financial liability for nearly all the 'ills that flesh is heir to.' "

And, further in the same opinion, it is said:

"In many cases, expert evidence, though all tending one way, is not conclusive upon the court and jury, but the latter as men of affairs may draw their own inferences from the facts, and accept or reject the statements of experts; but such cases are where the subject of discussion is on the border line between the domain of general and expert knowledge, as, for instance, where the value of land is involved, or where the value of professional services is in dispute. There the mode of reaching conclusions from the

facts when stated is not so different from the inferences of common knowledge that expert testimony can be anything more than a mere guide. But when a case concerns the highly specialized art of treating an eye cataract, or for the mysterious and dread disease claucoma, with respect to which a layman can have no knowledge at all, the court and jury must be dependent on expert evidence. There can be no other guide, and, where want of skill or attention is not thus shown by expert evidence applied to the facts, there is no evidence of it proper to be submitted to the jury. Again, when the burden of proof is on the plaintiff to show that the injury was negligently caused by defendant, it is not enough to show the jury, together with the expert opinion that it might have occurred from negligence and many other causes. Such evidence has no tendency to show that negligence did cause the injury. When a plaintiff produces evidence that is consistent with an hypothesis that the defendant is not negligent, and also with one that he is, his proof tends to establish neither. Louisville & N. R. Co. v. East Tennessee V. & G. Ry. Co., 22 U. S. App. 102, 114, 9 C. C. A. 314, and 60 Fed. 993; Ellis v. Railway Co. L. R. 9 C. P. 551."

In Miller v. Towles, 183 Mich. 252, 150 N. W. 118, it is said:

"In an action for malpractice in the treatment of patient's limb the jury, in the absence of expert testimony showing malpractice, may not draw inference of negligence of the surgeon."

To the same effect is Pheubus v. Mathier, 181 Ill. App. 274; Myer v. Hipke (Wis.) 197 N. W. 333; Zoterell v. Repp, 187 Mich. 319, 153 N. W. 692; Sheldon v. Wright, 60 Vt. 298, 67 Atl. 807; Wilkins v. Brock, 81 Vt. 332, 70 Atl. 572; Horton v. Dickson, 29 Cal. App. 321, 155 Pac. 128; Van Epps v. McKenny, 189 N. Y. S. 910; Norkett

v. Martin, 165 Pac. 256; McGraw v. Kerr, 23 Colo. App. 163, 128 Pac. 870.

In Janssen v. Mulder, 232 Mich. 183, 205 N. W. 159, the Supreme Court of Michigan said:

"While a failure to comply with the registration statute might subject the defendant to a criminal prosecution, such failure, coupled with a showing of treatment given, is not in itself sufficient on which to base a charge of malpractice. To maintain such an action, the plaintiff must show that the result complained of was due to negligence or unskillful treatment. While not registered, the defendant was a graduate of a chiropractic school. He but assumed to treat human ailments in accordance with the system taught in such school. This fact was well known to plaintiff. The burden was therefore cast upon her to show by competent evidence, not only that his treatment was injurious or not effective, but that the requisite care and skill was not exercised by him in administering it. It necessarily follows that such proof must be made by one engaged in treatment by similar methods to those employed by defendant. With the merits of the several drugless systems of relieving human ailments, the courts have no concern. It is sufficient to say that many of our citizens believe in their efficiency and secure the services of those engaged in practicing them. The treatment, given by any one of such practitioners, would probably be deemed improper and unskillful when judged by physicians who are taught to treat such ailments by the use of drugs and medicines. The unfairness of permitting the test as to whether a particular treatment was proper or skillful to be determined by one who uses a different method, or follows the teaching of another system, must be manifest.

"This is the first time a malpractice case involving this question has come before this Court. People v. Phippin,

70 Mich. 6, 37 N. W. 888,. and Locke v. Ionia, Circuit Judge, 184 Mich. 535, 151 N. W. 623, were criminal prosecutions for failure to comply with the laws relative to registration. In the following cases from other states, questions more or less similar to that here discussed were presented, and the conclusions reached were in harmony with the views we have expressed. Atkinson v. School of Osteopathy, 240 Mo. 338, 144 S. W. 816; Wilkins, Adm'r,. v. Brock, 81 Vt. 332, 70 A. 572; Patten v. Wiggins, 51 Me. 594, 81 Am. Dec. 593; Spead v. Tomlinson, 73 N. H. 46,. 59 A. 376; 68 L. R. A. 432; McGraw v. Kerr, 23. Colo. App. 163, 128 P. 870; Martin v. Courtney, 75 Minn. 255,. 77 N. W. 813; Wilcox v. Carroll, 127 Wash. 1, 219 P. 34; Jaeger v. Stratton, 170 Wis. 579, 176 N. W. 61; Berkholz v. Benepe, 153 Minn. 335, 190 N. W. 800; State v. Johnson, 84 Kan. 411, 114 P. 390, 41 L. R. A. (N. S.) 539,. and note thereto."

The duty devolves upon the chiropractor, the medical doctor and the surgeon, when consulted by a prospective patient, each to determine for himself at his peril whether or not the ailment to be dealt with is one which may be properly treated and corrected by that particular method of treatment of which he practices the application. His. diagnosis and the determination of the applicability of the method of treatment to the ailment must be sound, skillful and accurate and for error in this regard either must be held responsible even as he is held responsible for the skillful and careful manner of the application of the method of treatment after having determined the propriety of applying the same.

If the examination of the patient discloses, or if the condition of the patient is such that the examination should disclose to the skillful practitioner that the ailment is one to the treatment of which the methods used by the prac-

titioner are not recognized as being properly applicable he must not attempt to apply such method of treatment.

Because of the lack of proof adduced from witnesses who could qualify as experts as to the proper and correct method of administering the adjustments involved in this case and that such adjustment was administered in a careless, negligent or unskillful manner, the judgment should be reversed and it is so ordered.

Reversed.

Davis, C. J., and Whitfield, Ellis and Terrell, J. J., concur.

## On Rehearing.

Ellis, J.—This case was decided in August, 1933. The opinion was prepared by Mr. Justice Buford, four other members of the Court participating with him.

The substance of the Court's decision is that in an action for damages resulting from an injury caused by negligent treatment of a patient by a doctor of that phase of clinical surgery known as chiropractic, the doctrine of *res ipsa loquitur* does not apply; that while doctors of clinical medicine and clinical surgery, when consulted by one seeking treatment for a real or imaginary ailment, must determine at their peril whether the ailment, if any, to be dealt with may be properly treated and by what method, error, unskillfulness or negligence in either the diagnosis or treatment is not proven by the fact that the patient continues to suffer, grows worse or dies, because if such rule obtained a physician would in effect be a "warrantor of cures." If the doctrine of *res ipsa loquitur* were applicable few would be courageous enough to practice the healing art, for they would have to assume financial liability for nearly all the "ills that flesh is heir to," as said by Judge Taft in Ewing v. Goode, 78 Fed. Rep. 442.

Having announced that doctrine, the opinion then holds that the negligence of which the plaintiff complained and with which he charged the defendant in the application or administering of the treatment had not been established, because the "adjustment to which the injury causing death may be attributed" was not shown by the evidence to have been done in an "unskillful, careless or negligent manner."

A petition for a rehearing was granted on the application of Mr. Thornton and the case came on for oral argument on November 7th.

We do not agree with counsel who ably argued the case in behalf of the defendant in error, the plaintiff below, that the opinion holds that negligence in a case like the one at bar may not be inferred from circumstances. Nor do we announce any such doctrine now, but we do hold that when circumstantial evidence is relied upon in a case like the one at bar to establish negligence on the part of a physician or surgeon in the administration of treatment to a patient, whom the physician or surgeon has decided should be subjected to the particular treatment administered, the circumstances should raise a fair presumption of negligence.

The case of Cobb v. Twitchell, 91 Fla. 539, 108 South. Rep. 186, was not a case of the nature of that presented here.

Whether the circumstances raise a fair presumption of negligence involves a consideration of the very principle underlying the probative force and admissibility of such evidence, and that is the logical connection between the circumstances and the result as to which the inquiry is directed. For the circumstances therefore to have any probative value as evidence of the principal question they must of necessity be not only consistent with the theory that the result inquired into flowed therefrom, but inconsistent

with any other result which might just as reasonably and logically be established by such circumstances.

Now the jury in the case decided that the treatment administered by the doctor produced the patient's death, which was caused by a ruptured blood vessel in the brain. This conclusion was evidently arrived at from the evidence of physicians and surgeons who said that the rupture was caused by violence, and from the testimony of the defendant himself that the "adjustment" to which he submitted the patient, if properly made, could not have caused the rupture. That the rupture was caused by the adjustment was evidenced by the fact that the patient went to the doctor's rooms for a treatment like that which she had before received and while under the treatment suddenly suffered the shock which resulted in severe pain and subsequent unconsciousness.

Upon reconsideration of the case we hold that the Court should recede from its former conclusion and affirm the judgment.

It is so ordered.

DAVIS, C. J., and WHITFIELD and BROWN, J. J., concur.

TERRELL and BUFORD, J. J., dissent.