C. E. FOSTER v. L. ELMER THORNTON.

170 So. 459.

Opinion Filed September 21, 1936.
Rehearing Denied November 16, 1936.

*Montague Rosenberg* and *Arthur T. Holmes* (LaCrosse, Wisconsin), for Plaintiff in Error;

*Stockton, Ulmer & Murchison,* for Defendant in Error.

TERRELL, J.—On June 23, 1932, in an action for malpractice, defendant in error secured a judgment against the plaintiff in error in the Circuit Court of Duval County for $5,000.00. The judgment was on writ of error reversed by this Court August 10, 1933. On Petition for Rehearing the judgment of reversal was receded from and by opinion filed February 9, 1934, the judgment of the court below was affirmed. Foster v. Thornton, 113 Fla. 600, 152 So. 667. Plaintiff in error then filed Petition for Rehearing which was denied February 27, 1934. On June 26 following this Court on motion of plaintiff in error entered its order directing the Clerk of the Circuit Court to return the mandate to this Court. A second oral argument was heard July 31, 1934, and on December 6 following, a Per Curiam opinion was filed which among other things announced an equal division of the Court and reinstated the judgment of reversal, dated August 10, 1934. Foster v. Thornton, 119 Fla. 49, 150 So. 490.

The mandate of this Court went down and the case was retried June 3, 1935, resulting in a verdict for $20,670.00 which was reduced by a remittitur in the sum of $10,000.00 and final judgment was entered for $10,670.00 from which the present writ of error was prosecuted.

The case grows out of these facts: The plaintiff in error was a chiropractor and on the 22nd day of January, A. D. 1932, the wife of defendant in error went to his office for a chiropractic treatment. She had been treated by him once each day for the four days immediately preceding the date last named. She had been a sufferer for years from migraine headaches and had been treated by a number of allopaths without beneficial results. Immediately following the fifth treatment Mrs. Thornton was seized with severe pain in the head and neck, cried and groaned profusely, became nauseated and vomited, followed by unconsciousness. Dr. Porter, who had an office in the same building, was called by the plaintiff in error and gave her one-half grain of morphine to allay the pain. The pain continued and Dr. Johnson was called about an hour later and gave a second dose of morphine. Mrs. Thornton was carried home in an ambulance and died about two weeks later. During the interim she was in an unconscious or semi-conscious condition. This action was by the husband, defendant in error, to recover damages for the loss of his wife on the theory that the treatment was negligently done.

An autopsy was performed on the day Mrs. Thornton died and the cause of her death was pronounced as "Hemorrhagic Pachymeningitis. Thrombosis left lateral sinus. Hemorrhage Cervical Spinal Canal, Regions 1-2-3 Cervical vertebrae." The death certificate showed that she died of "acute hemorrhagic pachymeningitis." Plaintiff's theory of the case was that his wife came to her death by reason of a lesion or tear in the left lateral sinus caused by the application of an undue amount of force by defendant in making the chiropractic adjustment, while the plaintiff in error contends that the deceased came to her death by natural causes, that the lesion in the left lateral sinus was not the cause of her

death, and that it was not caused by the application of undue force in making the adjustment. This was the issue presented by the pleadings.

In the decision dated August 10, 1933, we held in effect that in an action for damages resulting from an injury caused by negligent treatment of a patient by a doctor, the doctrine of *res ipsa loquitur* does not apply, that when applied to for treatment the doctor must determine at his peril whether or not the ailment complained of may be properly treated and the method to be followed in the treatment, but that error, unskillfulness, or negligence in diagnosis or treatment will not be proven by the fact that the patient continues to suffer, grows worse, or dies, because if this were the case doctors would be warrantors of cures.

We also held that negligence in a case like this might be inferred from circumstances proven, but that when circumstantial evidence is relied on to establish negligence on the part of a physician or surgeon in the administration of treatment to a patient whom the physician or surgeon has decided should be subjected to the particular treatment administered, the circumstances should raise a fair presumption of negligence.

The ultimate question with which we are confronted here is whether or not the jury were warranted in assuming that the defendant applied undue force and failed to exercise the degree of care required by chiropractic standards in treating Mrs. Thornton.

About four hundred pages of evidence is brought here affecting this issue. Some of it is pertinent and much of it has no place in the record. That which is pertinent shows that the deceased had a thorough physical examination about three weeks before she went to the defendant for treatment and was pronounced to be a "perfectly healthy

person except for migraine headaches and slightly high blood pressure." When deceased went to defendant for the treatment complained of she was told by him that her trouble was in the cervical vertebrae (those in the neck) and he proceeded to give her an adjustment by a sharp twist of the neck. Deceased immediately felt a sharp pain in the back of her neck and head as though something went through the top of her head. She cried and groaned with pain in the head and neck, became nauseated, vomited, fainted, and the elements turned black. Dr. Porter was summoned from his office fifty or sixty feet away and administered a hypodermic of morphine. He testified that he had heard deceased cries of pain for several minutes before he was summoned and heard them for ten minutes after returning to his office. Dr. Johnson was summoned an hour later and testified that he found deceased in a very serious condition, her pulse and heart were weak, she was in a comatose state, was cold and clammy, the pupil of her left eye was dilated and that of her right eye was contracted, pointing to a brain injury, and she was in an unconscious condition. About two hours after she was injured Mrs. Thornton was, on the advice of Dr. Johnson, removed to her home by ambulance, where she continued unconscious for two days. She then regained consciousness, but was partially paralyzed, unable to do anything for herself, daily grew worse, and died two weeks later in the hospital.

Deceased had suffered no bodily injury and had no external force applied except the adjustment by defendant. An autopsy was performed, the brain was removed and submerged in a ten per cent. solution of formaldehyde, and later a sectional microscopic examination of it was made by a well qualified pathologist, who testified that it was normal in every respect, that death was caused by a hemorrhage

resulting from a ragged tear about three-quarters of an inch long in the left lateral sinus, that in his opinion such a tear could have been brought about only by the application of. violent external force in a negligent manner, that the causes of deceased's death took place prior thereto and that the injury to her brain took place prior to her death and could not have been done in performing the autopsy and could not have been other than a traumatic injury.

Dr. Milam, a well recognized allopath, testified to some degree of learning in the chiropractic art, that he had made adjustments in conformity with chiropractic methods, and had taken X-rays to determine the accuracy of these adjustments, that he was familiar with the degree of care required of chiropractors in making adjustments like that brought in question, and that in his judgment the injury to deceased was caused by negligent application of undue force on the part of defendant.

Dr. J. G. Lyerly, a neurologist of high standing, testified that in his judgment there was no possible explanation for the injury to deceased except the negligent adjustment given by defendant. Several allopaths of good reputation testified that a lesion in the brain would often cause definite and immediate symptoms such as those exhibited by deceased immediately after her injury and that in their judgment the lesion in this case could not have been caused by a diseased condition of the brain or in removing the brain after death for examination.

Defendant admitted that he made the adjustment which is alleged to have caused deceased's death and demonstrated to the jury the manner in which he did it. He corroborated the testimony of Dr. Porter and Dr. Johnson as to Mrs. Thornton's condition in his office immediately after the treatment, her cries from pain, and treatment therefor.

Defendant also testified that such adjustments as were given deceased were dangerous if not given properly, and that if they resulted in a lesion they would not be according to standard. Otherwise the evidence of defendant and Mrs. Gordon, a nurse in his office, was in conflict with that of the other witnesses which has been detailed.

Objection was raised to the evidence of Dr. Dyrenforth, the pathologist, pertaining to the microscopic examination of the brain because it was made a year after death. It was shown that the brain was removed at the autopsy and placed in a ten per cent. solution of formaldehyde, where it was kept until examined and analyzed. It was also shown that it would remain in a perfect state of preservation indefinitely when so preserved and might as effectively be examined one time as another. This objection was consequently without merit.

Plaintiff in error contends that before recovery can be effected in this case the plaintiff must prove by qualified experts of the chiropractic school of healing the standard of care required in making an adjustment like the one complained of and that in treating Mrs. Thornton the defendant negligently departed from the standard so required of him.

In our opinion of August 10, 1933, we held that when expert evidence is required to prove that that which is recognized as a scientific treatment or operation was negligently, carelessly, or unskillfully performed, the witness must qualify as having expert knowledge of the correct and proper manner and method of administering the particular treatment which is charged to have been carelessly, negligently, or unskillfully performed. For cases supporting this rule see Thornton v. Foster, 113 Fla. 600, 152 So. 667.

The rule as contended for is well settled, but the decision of the trial court is conclusive on the question as to

the qualification of a witness as expert or skilled unless it appears from the transcript to have been erroneous or to have been founded on some error of law. Tully v. State, 69 Fla. 662, 68 So. 934; Atlantic Coast Line R. Co. v. Dees, 56 Fla. 127, 48 So. 28. Further the rule as contended for, like all others, has its exceptions. It does not exclude the testimony of physicians of other schools or experts in other lines when that testimony bears on a point as to which the principles of the schools do or should concur, such as the dangers incident to the use of X-rays or the existence of a condition that should be recognized by any physician. 21 R. C. L. 383; 22 C. J. 661. In Longan v. Weltmer, 180 Mo. 322, 79 S. W. 655, it was held that any person qualified by education and experience may testify whether the treatment which plaintiff underwent was proper.

In the case at bar there is no question that the treatment given Mrs. Thornton was approved by chiropractic science. The question we are confronted with is whether a recognized scientific treatment was negligently administered. As heretofore stated, anyone qualified as having expert knowledge on this point is competent to testify, whether he be chiropractor, allopath, or the member of some other cult. The testimony of Dr. Milam, Dr. Dyrenforth, the pathologist, and Dr. Lyerly, the neurologist, met this test and was competent. This evidence was in some respects contradicted by the defendant, but the matter of resolving these conflicts was purely a jury question.

In cases arising from charges of malpractice the sum of money involved, regardless of its size, is a mere gesture in comparison with the professional character and reputation of the defendant. He should not, therefore, be condemned on evidence that does not point conclusively to his negligence. There is no material difference in the evidence

of the defendant in this and in the former trial. The material difference in the evidence of the plaintiff in this from the former trial is that Dr. Ralph N. Green was incompetent from illness to testify at this trial and the evidence of Dr. Milam and Dr. Lyerly was taken at this trial, but was not taken at the former trial. The evidence of the latter was competent under the rule in such cases and if believed was convincing. It was strengthened by other testimony which unsupported would not have been sufficient to support the judgment and verdict. There was no effort on the part of defendant to weaken or combat the evidence of the plaintiff by the evidence of his (defendant's) school of healing.

It is contended that error was committed in admitting in evidence statements alleged to have been made by the deceased to her husband and to Dr. Moe in reference to her condition. The objection to this evidence was that it was not part of the *res gestae*.

The rule in this State is that declarations which are natural emanations or outgrowths of the act in litigation, although not precisely concurrent in point of time, if they were yet voluntarily and spontaneously made so nearly contemporaneonus as to be in the presence of the transaction which they illustrate and explain, and were made under such circumstances as necessarily exclude the idea of design or deliberation, must upon the clearest principles of justice, be admissible as part of the act or transaction. Washington v. State, 86 Fla. 533, 98 So. 605.

The statements complained of were made immediately after regaining consciousness, were the outgrowth of the transaction, were explanatory of it, they exclude any idea of design or deliberation, and were corroborated by the evi-

dence of several other witnesses. We find no reason for holding them to be prejudicial or incompetent in this case.

It is contended that the verdict is excessive. The answer to this is that outside of the amount allowed for doctors, nurses, and medical bills, there is no criterion for fixing an allowance in such cases but the conscience of the jury. No two juries would likely allow the same amount, but so long as the amount assessed is not shocking or unreasonable in the mind of this Court it will not be disturbed. The amount of the damages like the question of negligence was essentially a jury question, the verdict reached finds support in the record, and the damages awarded are not unreasonable.

It is accordingly affirmed.

Affirmed.

WHITFIELD, C. J., and ELLIS, BROWN and DAVIS, J. J., concur.

BUFORD, J., dissents.