99 So.2d 575 (1956)
Steve BOURGEOIS, as Administrator of the Estate of Nicholas Geoffrey Bourgeois, Appellant,
v.
DADE COUNTY, Florida, a Political Subdivision of the State of Florida, Appellee.
Supreme Court of Florida. Special Division A.
November 14, 1956.
On Rehearing October 18, 1957.
Kelner & Lewis, Miami Beach, for appellant.
F.E. Gotthardt of Morehead, Forrest, Gotthardt & Orr, Miami, for appellee.
PER CURIAM.
Affirmed on authority of the decisions in Horowitz v. Schwartz, Fla. 1954, 74 So.2d 801; Foster v. Thornton, 113 Fla. 600, 152 So. 667. See also Bowles v. Bourdon, 148 Tex. 1, 219 S.W.2d 779, 13 A.L.R.2d 1, Annotation, page 28.
DREW, C.J., THORNAL and BUFORD, JJ., and CROSBY, Associate Justice, concur.

*576 On Rehearing Granted
THORNAL, Justice.
Appellant Steve Bourgeois, as administrator, seeks reversal of a final judgment entered pursuant to a directed verdict in favor of appellee Dade County at the close of the plaintiff's case in an action for damages for alleged negligence in the care and treatment of appellant's decedent while a patient in the emergency ward of the County Hospital.
The determining question is whether there was a total absence of evidence to establish a causal relationship between the alleged negligence and the ultimate death of appellant's decedent or the hastening of his death so as to justify the directing of a verdict in favor of the appellee.
By our original judgment entered November 14, 1956, we were inclined to the view that the trial judge was correct in concluding that the evidence of causal relationship was too speculative to support jury consideration of the matter. We then affirmed his judgment without opinion.
We subsequently granted rehearing. On careful consideration of the entire record on rehearing we are led to the conclusion that the evidence was sufficient to justify submission of the cause to the jury.
About 1:50 a.m. September 6, 1954 Nicholas Geoffrey Bourgeois, dressed only in trunks, was found stretched out on the lawn in front of the Dean Hotel in a condition which a Miami police officer described as "unconscious." The police called an ambulance and Bourgeois was taken to the Jackson Memorial Hospital on a stretcher. The ambulance driver testified that the man was unconscious and that when delivered to the hospital he reported to the admitting nurse that Bourgeois "was out." The police officer detected a "slight odor" of alcohol. The ambulance driver noticed none at all.
Bourgeois was taken into the hospital emergency room. The attending intern testified that the man's chest sounds and pulse were normal and although incoherent he was not unconscious. The intern stated that the man's breath literally reeked with alcohol. He stated that someone told him that the man had been "found on the street" but he did not undertake to obtain any history of the situation at all. No X-rays were made. After what appears to have been a relatively superficial clinical examination, the intern released the man to a nurse to return him to the hospital police room for delivery to the police as drunk.
The police called for Bourgeois at the hospital sometime after 3:00 a.m., carried him out to a patrol car and conveyed him to the municipal jail. The police officer testified that the man slumped over on the seat of the automobile as if his "back were broken." When placed on the elevator to carry him up to the jail, the man couldn't stand up but slumped down on the floor. He was then put into a cell on a metal cot and left to himself. He was found dead in his cell at 7:00 a.m. Death was caused by air and hemorrhaging in the thoracic cavity resulting from the piercing of the cavity by broken ribs.
Alleging negligence in the diagnosis and treatment of the decedent and the failure to use reasonable care and skill in such diagnosis and treatment, appellant brought this action for damages suffered by decedent's estate as a result of his death. Being of the view that the evidence of the causal connection between the alleged negligence and the ultimate death was too speculative to justify consideration by a jury, the trial judge directed a verdict for the appellee. Judgment was entered on the verdict and reversal of this judgment is now sought.
The appellant contends that when examined in the light most favorable to the plaintiff below the evidence was adequate to take the case to the jury.
It is the position of the appellee that the only evidence of causal relationship was so *577 speculative and indefinite that it could not have supported a verdict for the appellant, plaintiff below.
It is a rule well established that a party requesting a directed verdict admits both the facts in evidence and also every conclusion favorable to the adverse party which a jury might fairly and reasonably infer from the evidence. Under our system of trial by jury a case should not be withdrawn from the jury's consideration unless as a matter of law no proper view of the evidence could possibly sustain the position of the party against whom the verdict is directed.
Admittedly the science of medicine is not an exact science. Physicians are not to be held liable for honest errors of judgment. They are allowed a wide range in the exercise of their judgment and discretion. To hold one liable it must be shown that the course which he pursued was clearly against the course recognized as correct by his profession. On the other hand the attending physician must use the judgment and form the opinions of one possessed of knowledge and skill common to medical men practicing in the same or similar communities. Regan, Doctor and Patient and the Law, Sec. 39, p. 227.
The responsibility and degree of care imposed upon the appellee hospital is to be measured by the responsibility and degree of care imposed upon its employees, the intern and nurses in the emergency ward.
Here it appears that a man, dressed only in shorts, was delivered into the custody of the emergency room attendants at about 2:00 a.m. by an ambulance driver. Although the intern testified that the man was belligerent and reeking with alcohol, both the police officer who found him and the ambulance driver who delivered him testified that at most there was only a mild odor of alcohol and the man breathed heavily but did not utter a word. After fifteen or twenty minutes the intern discharged the patient as a drunk. The factual problem is whether he should have pursued a more thorough course of inquiry and examination under the circumstances. No history of the man's condition or the facts leading up to his delivery to the hospital was at any time obtained. No X-rays were made. The hospital director himself testified that if a patient was unconscious and unable, as distinguished from unwilling, to give his name and state how he was injured when delivered to the hospital, then releasing him in the same condition would in his judgment fall below the standard of care required under the circumstances. The physician who was the supervisor of the emergency room at the time testified that if a patient in the condition of Bourgeois were admitted and could not give a history of his condition, and one could not be obtained, then he would certainly make X-rays in an effort to form a diagnosis. He also testified that he had seen Bourgeois when he was admitted to the hospital, that he could not say that the man was intoxicated and that the fact that he had a normal pulse rate was inconsistent with a state of intoxication.
It is rather clear that the ultimate cause of death was the puncturing of the chest cavity by several of some nine ribs which had been fractured at the spinal column. The pathologist who performed an autopsy testified that the man's chest cavity was full of air and blood and that this ultimately produced his death. As to whether a suspected fall some twenty-three feet from the second floor of the Dean Hotel produced the puncturing of the chest cavity or whether the failure to hospitalize the man and on the contrary permitting him to be dragged around and moved about after the examination in the emergency room was the causal factor the pathologist testified that he could not conclusively state. He did, however, testify that permitting a man with nine broken ribs in the condition in which this man obviously was, to be moved and shunted about certainly would aggravate his condition and expedite his death.
*578 When we adopt the view of the evidence most favorable to the appellant, as we must do, we find conflicts as to the man's condition of sobriety as well as conflicts as to his consciousness when admitted to the hospital. We find the failure to obtain a history on a man unable to talk and unable to give the background of his condition. We find a failure to make a thorough detailed examination of an unconscious patient unable to speak for himself. We find that he was delivered into the hands of the police as a "drunk" following which the man was forced to sit on a hard bench in a police ward, dragged into a patrol car, loaded onto the back seat of an automobile, transported to the court house, moved to the sixteenth floor, slumped over on the elevator floor and then deposited on a jail cot without a mattress.
In view of all of the circumstances reflected by this record and again construing these circumstances most favorably to the appellant, we are on rehearing compelled to the conclusion that there was adequate evidence of negligence in the treatment, examination and ultimate diagnosis of the decedent's condition to justify taking the case to the jury on that score. As to the existence of a causal relationship between the alleged negligence and the ultimate death, the opinion of the experts was such that under the circumstances the treatment that this man received at least could have aggravated his condition and expedited his death if the jury believed them.
Under these circumstances the rule announced in Wager v. East Coast Hospital Ass'n, 105 Fla. 547, 141 So. 743, is applicable and requires a reversal. See also Central Dispensary and Emergency Hospital v. Harbaugh, 84 U.S.App.D.C. 371, 174 F.2d 507.
We have not discussed the question of the liability vel non of a county in an action of this nature. This question was not raised or argued on this appeal.
For the reasons stated we therefore recede from our judgment of affirmance entered November 14, 1956, and on rehearing granted, the final judgment under attack is reversed and the cause remanded for a new trial.
TERRELL, C.J., and THOMAS, ROBERTS and O'CONNELL, JJ., and CROSBY, Circuit Judge, concur.
BUFORD, J., dissents.